UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

GWENDOLYN GRAY,                                    :
                                                   :
                      Plaintiff,                   :
                                                   :
            v.                                     :      08 Civ. 3233 (RWS)
                                                   :
THE UNITED STATES OF AMERICA,                      :      **DECLARATION OF**
WACKENHUT SERVICES, INCORPORATED, :                       **DAVID BOBER**
ALUTIIQ SECURITY & TECHNOLOGY, LLC :
and AFOGNAK NATIVE CORPORATION,                    :      ECF Case
                                                   :
                      Defendants.                  :

-------------------------------------------------------- x

David Bober, pursuant to 28 U.S.C. § 1746, declares as follows:

1.  I am an Assistant United States Attorney in the office of Michael J. Garcia, United

States Attorney for the Southern District of New York.  I have been assigned to defend this

matter, and I am familiar with the facts herein.  I make this declaration in support of the motion

to dismiss of defendant the United States of America.

2.  Attached as Exhibit A to this declaration is a true and accurate copy of the claim for

compensation under the Federal Employees' Compensation Act ("FECA") filed by plaintiff

Gwendolyn Gray ("Gray") with the Department of Labor Office of Workers' Compensation

Programs.  The form is signed by Gray and dated July 9, 2005.  Gray certified in the claim for

compensation that her injuries were sustained "while in the performance of [her] duty for the

United States."

3.  Attached as Exhibit B to this declaration is a true and accurate copy of the Notice to

the Claimant dated January 25, 2006, in which the Department of Labor denied Gray's claim for

compensation under FECA because she had not submitted sufficient proof of injury.

4.  Attached as Exhibit C to this declaration is a true and accurate copy of Gray's Federal

Tort Claims Act ("FTCA") Claim for Injury, Death, or Damage, in which Gray claimed

personal-injury damages of $3,000,000.00 and property damage of $4,423.43.  The claim is

signed by Gray and dated April 9, 2007, and was received by the office of the Judge Advocate

General at the United States Military Academy at West Point on April 18, 2007.

5.  Attached as Exhibit D to this declaration is a true and accurate copy of a letter from

Col. Charles D. Hayes, Jr., Chief, Tort Claims Division, to Gray's attorney, dated March 25,

2008.  The letter informed Gray's attorney that Gray's FTCA claim was being denied because,

among other things, as a federal employee alleging on-the-job injury Gray's exclusive remedy

was under FECA.

6.  Attached as Exhibit E to this declaration is a true and accurate copy of a Military

Police Report dated May 18, 2005.

7.  Attached as Exhibit F to this declaration is a true and accurate copy of a letter from

First Mercury Insurance Company to Gray's attorney, dated July 13, 2007.

8.  Attached as Exhibit G to this declaration is a true and accurate copy of relevant

portions of the Performance Work Statement entered into by the Government and Alutiiq

Security & Technology LLC dated February 28, 2005.

9.  I have been informed by the Department of the Army that Wackenhut Services,

Incorporated, was a subcontractor of Alutiiq Security & Technology LLC and Afognak Native

Corporation, and that the Army does not have a copy of any contract between those entities

because the Army does not typically receive copies of contracts between its independent

contractors and their subcontractors.

I swear under penalty of perjury that the foregoing is true and correct.


Dated: New York, New York
       July 9, 2008

                                    /s/David Bober_____
                                    DAVID BOBER

07/28/2005  14:53  8458390223  GRADUSMA  PAGE 23/36

## Claim for Compensation

**U.S. Department of Labor**
Employment Standards Administration
Office of Workers' Compensation Programs



**SECTION 1**                                          **EMPLOYEE PORTION**

a. Name of Employee    Last    Gwendolyn    First    Tarceen    Middle

| OMB No. | 1218-0103 |
|---|---|
| Expires: | 08/31/2005 |

b. Mailing Address (Including City, State, ZIP Code)

P.O. Box 1684    Newburgh N.Y. 12551

c. OWCP File Number
022503725

d. Date of Injury
Month  Day  Year
5/19/05

e. Social Security Number
096487871

E-Mail Address (Optional)

f. Telephone No./FAX No.
845-561-6535

**SECTION 2**    Compensation is claimed for:

Inclusive Date Range
From  07-17-05    To  07-22-05

Intermittent?

a. ☐ Leave without pay     ☐ Yes  ☒ No   Go to Section 3

b. ☐ Leave buy back      ☐ Yes  ☐ No   Go to Section 3, and Complete Form CA-7b

c. ☐ Other wage loss; specify type, such as downgrade, loss of right differential, etc.   Type: _____   ☐ Yes  ☐ No   Go to Section 3

d. ☐ Schedule Award (Go to Section 4)     If intermittent, complete Form CA-7a; Time Analysis Sheet

*ENTERED*
*CL 6 CT*

**SECTION 3**    Have you worked outside your federal job during the period(s) claimed in Section 2? (include salaried, self-employed, commission, volunteer, etc.)   no

7/29/08

☐ Yes    Name and Address of Business:

☒ No
Go to section 4

Name    Address    City  State  ZIP Code

Dates Worked:    Type of Work:

**SECTION 4**    Is this the first CA-7 claim for compensation you have filed for this injury?

☒ Yes   Complete Sections 5 through 7 and a Form SF-1199A, "Direct Deposit Sign-up"

☐ No    Has there been any change in your dependents, or has your direct deposit information changed, or has there been a claim filed with U.S. Civil Service Retirement, another federal retirement or disability law, or with the Department of Veterans Affairs since your last CA-7 claim?

☐ Yes - Complete Sections 5 through 7 or a new SF-1199A to reflect change(s)   ☐ No - Complete Section 7

**SECTION 5**    List your dependents (including spouse)

Living with you?

| Name | Social Security # | Date of Birth | Relationship | Yes | No | |
|---|---|---|---|---|---|---|
| Pealty | 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 | 2/10/57 | Daughter | ☐ | ☐ | For dependents not living with you, complete items a and b below. |

a. Are you making support payments for a dependent shown above?   ☐ Yes  ☒ No   If Yes, support payments are made to:

Name:    Address:    City    State    ZIP Code

b. Were support payments ordered by a court?   ☐ Yes  ☐ No   If Yes, attach copy of court order.

**SECTION 6**    a. Was/Will there be a claim made against a 3rd party?   ☐ Yes  ☐ No

b. Have you ever applied for or received disability benefits from the Department of Veterans Affairs?

| ☐ Yes ☒ No | Claim Number | Full Address of VA Office Where Claim Filed | Nature of Disability and Monthly Payment! |
|---|---|---|---|

c. Have you applied for or received payment under any Federal Retirement or Disability law?   no

| ☐ Yes ☒ No | Claim Number | Date Annuity Began | Amount of Monthly Payment | Retirement System (CSRS, FERS, SSA, Other) ☐ CSRS ☐ FERS ☐ SSA ☐ Other |
|---|---|---|---|---|

**SECTION 7**    I hereby make claim for compensation because of the injury sustained by me while in the performance of my duty for the United States. I certify that the information provided above is true and accurate to the best of my knowledge and belief.

Any person who knowingly makes any false statement, misrepresentation, concealment of fact, or any other act of fraud, to obtain compensation as provided by the FECA, or who knowingly accepts compensation to which that person is not entitled is subject to civil or administrative remedies as well as felony criminal prosecution and may, under appropriate criminal provisions, be punished by a fine or imprisonment, or both. In addition, a felony conviction will result in termination of all current and future FECA benefits.

Employee's Signature  Gwendolyn T Gray    Date (Mo., day, year)  7/9/05

Form CA-7
Rev. Nov. 1998

**Employing Agency Portion**
For first CA-7 claim sent, complete sections 8 through 15.
For subsequent claims, complete sections 12 through 15 only.

022503725

## SECTION 8

| | Show Pay Rate as of | Additional Pay | Additional Pay | Additional Pay |
|---|---|---|---|---|
| Date of Injury: | Base Pay | Type _____ | Type _____ | Type _____ |
| Date: 5/19/05 | $ 38.84 per hr | $ ____ per ____ | $ ____ per ____ | $ ____ per ____ |
| Grade: GS05 Step: 10 | | | | |
| Date Employee Stopped Work: | | Type _____ | Type _____ | Type _____ |
| Date: 5/19/05 | $ 38.84 per hr | $ ____ per ____ | $ ____ per ____ | $ ____ per ____ |
| Grade: GS05 Step: 10 | | | | |

Additional pay types include, but are not limited to: Night Differential (ND), Sunday Premium (SP), Holiday Premium (HP), Subsistence (SUB), Quarter (QTR), etc. (List each separately)

## SECTION 9

a. Does employee work a fixed 40-hour per week schedule? Yes ☐ No ☐

1. If Yes, circle scheduled days: ☐ S ☐ M ☐ T ☐ W ☐ TH ☐ F ☐ S

2. If No, show scheduled hours for the two week pay period in which work stopped. Circle the day that work stopped.

| FOR EXAMPLE ONLY | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | S | M | T | W | TH | F | S | | | S | M | T | W | TH | F | S |
| WEEK 1 From 5/16 to 5/20 | | 8 | 4 | 8 | 8 | | | From 7/10 to 7/16 | | | | | | | | |
| WEEK 2 From 5/21 to 5/27 | | 8 | | 8 | 8 | | 4 | From 7/17 to 7/23 | | | | | | | | |

b. Did employee work in position for 11 months prior to injury? ☑ Yes ☐ No

If No, would position have afforded employment for 11 months but for the injury? ☐ Yes ☑ No

## SECTION 10  On date pay stopped, was employee enrolled in:

a. Health Benefits under the FEHBP? ☐ No ☐ Yes Code _____

b. Basic Life Insurance? ☐ No ☐ Yes

c. Optional Life Insurance? ☐ No ☑ Yes Class _____ (0-2 only)

d. A Retirement System? ☐ No ☑ Yes Plan _____ (Specify CSRS, FERS, Other)

## SECTION 11  Continuation of Pay (COP) Received (Show inclusive dates):

From _____ To _____

Intermittent? ☐ Yes — Complete Time Analysis Sheet, Form CA-7a    ☐ No

## SECTION 12  Show pay status and inclusive dates for period(s) claimed:

| | | Intermittent? | |
|---|---|---|---|
| Sick Leave From _____ To _____ | | ☐ Yes ☐ No | If Intermittent, complete Form CA-7a, Time Analysis Sheet. |
| Annual Leave From _____ To _____ | | ☐ Yes ☐ No | |
| Leave without Pay From 07-17-05 To 07-27-05 | | ☐ Yes ☑ No | If leave buy back, also submit completed Form CA-7b. |
| Work From _____ To _____ | | ☐ Yes ☐ No | |

## SECTION 13  Did employee return to work? ☐ Yes ☑ No

If Yes, date _____

If returned, did employee return to the pre-date-of-injury job, with the same number of hours and the same duties?

☐ Yes ☐ No    If No, explain

## SECTION 14  Remarks:

## SECTION 15  An employing agency official who knowingly certifies to any false statement, misrepresentation, or concealment of fact, with respect to this claim may also be subject to appropriate felony criminal prosecution.

I certify that the information given above and that furnished by the employee on this form is true to the best of my knowledge, with any exceptions noted in Section 14, Remarks, above.

Signature _____ (Agency Official)    Title _____    Date 7/28/05

Name of Agency _____ Susan D. deMilt

If OWCP needs specific info Name _____ Injury Compensation Specialist
Civilian Personnel Advisory Center
U.S. Military Academy
West Point NY 10996

Telephone No. _____ Phone: 845-938-2253 / FAX: 845-938-2363

is:

E-Mail Address _____

File Number: 022503725
foi-nodticlaim-nyc-D-l

NAME: GWENDOLY T. GRAY
CASE NUMBER: 022503725
DATE OF INJURY: 05/18/2005

## NOTICE TO THE CLAIMANT

ISSUE:

The issue for consideration is whether the evidence in file is sufficient to meet the guidelines under the Federal Employees' Compensation Act for establishing that an incident occurred as claimed and that you sustained an injury in connection with this incident.

REQUIREMENTS FOR ENTITLEMENT:

To establish 'fact of injury' the evidence must establish that an incident occurred on the date, at the time and in the manner claimed and that a medical condition has been diagnosed in connection with the same.

BACKGROUND:

An employee of the federal government, you filed a timely claim for compensation for a traumatic injury that you claim to have sustained on 05/18/2005. You claim that, on this date, you suffered injuries to your head, hand neck, shoulder, chest fingers and back as a result of a motor vehicle accident.

Your agency challenged your claim on the basis that you disobeying direct orders, and violating safety rules.

DISCUSSION OF EVIDENCE:

We received factual evidence consisting of form CA-1 Notice of Traumatic Injury, incident report, and statement from security officer, agency challenge, and absence authorization from John Fischer, D.C. dated 5/24/05 and 6/01/2005, and emergency room paperwork from Cornwall Hospital.

You were advised of the deficiencies of your claim by letter dated 07/13/2005, and were thereby afforded the opportunity to provide additional factual and medical supportive evidence. You were advised of the time frame within which this evidence was to be submitted.

In response, we received absence authorization from Dr. Fischer D.C. dated 6/27/2005, a sworn statement signed by you, correspondence from an attorney's office, physical therapy notes, medical notes from your chiropractor, and a fitness for duty document.

This was insufficient to support your claim because the medical evidence submitted fails to show history, a diagnosis which is acceptable from a chiropractor and causal relation. You failed to supply any x-ray results which showed any subluxation which is the only diagnosis accepted from a chiropractor by this agency. The factual element of your claim

File Number: 022503725
foi-nodticlaim-nyc-D-t

also needs further clarification, you stated the gate came down on you after the officer told you it was ok to go through. However, the officer's account of the situation differs in that he states you approached the gate at a high rate of speed and did not stop at the check in but proceeded over the barrier. This issue needs to be addressed, you did not properly respond to our questionnaire, you only made mention of the dates.

The Federal Employees Act, 8101 (2)"physician" includes surgeons, podiatrists, dentists, clinical psychologists, optometrists, chiropractors, and osteopathic practitioners within the scope of their practice as defined by State law. The term "physician" includes chiropractors only to the extent that their reimbursable services are limited to treatment consisting of manual manipulation of the spine to correct a subluxation as demonstrated by X-ray to exist, and subject to regulation by the Secretary.

a.       Physicians Qualified to Provide Opinions. As defined by 5 U.S.C. 8101, the term "physician" includes surgeons, osteopathic practitioners, podiatrists, dentists, clinical psychologists, optometrists and chiropractors within the scope of their practice as defined by State law. [See FECA PM 3-100.3(a) and (b).] Clinical psychologists may serve as treating physicians for work-related emotional conditions. A chiropractor's opinion constitutes medical evidence only if a diagnosis of subluxation of the spine is made and supported by X-rays (Loras C. Digmann, 34 ECAB 1049). A claims examiner may request the x-ray or the report of x-ray if there is any indication in the factual or medical evidence that there may not be a subluxation present.

BASIS FOR DECISION:

An injury within the meaning of the Federal Employees' Compensation Act (FECA) was not demonstrated.

The Employees' Compensation Appeals Board (ECAB) has ruled that a claimant has the burden of establishing by the weight of the reliable, probative and substantial evidence that the conditions for which he claims compensation were caused or adversely affected by factors of employment. In a similar case, where the facts were not in doubt, the ECAB affirmed the Office decision to deny the claim. In this case, it is uncontested that appellant experienced the employment incident at the time, place and in the manner alleged. However, the question of whether an employment incident caused injury generally can be established by medical evidence and appellant has not submitted rationalized, probative medical evidence to establish that the employment incident caused a personal injury and resultant disability... Accordingly, as appellant failed to submit any probative medical evidence establishing that she sustained an injury in the performance of duty, the Office properly denied appellant's claim for compensation. (Walker 02-2214, 6-10-03).

In your case, the medical evidence received is insufficient to establish that you sustained an injury in connection with the reported incident. In addition, the factual aspect of your case is inadequate.

CONCLUSION:

File Number: 022503725
foi-nodticlaim-nyc-D-1

Therefore, based on these findings, your claim is denied as you have not met the requirements for establishing that you sustained an injury as alleged.

A. Taylor
Claims Examiner

Case Number: 022503725
Employee: GWENDOLY T. GRAY
Date: January 25, 2006

## FEDERAL EMPLOYEES' COMPENSATION ACT APPEAL RIGHTS

If you disagree with the attached decision, you have the right to request an appeal. If you wish to request an appeal, you should review these appeal rights carefully and decide which appeal to request. There are 3 different types of appeal: HEARING (this includes either an Oral Hearing, or a Review of the Written Record), RECONSIDERATION, and ECAB REVIEW. YOU MAY ONLY REQUEST ONE TYPE OF APPEAL AT THIS TIME. Place an "X" on the attached form indicating which appeal you are requesting. Complete the information requested at the bottom of the form. Place the form on top of any material you are submitting. Then mail the form with attachments to the address listed for the type of appeal that you select. Always write the type of appeal you are requesting on the outside of the envelope ("HEARING REQUEST", "RECONSIDERATION REQUEST", or "ECAB REVIEW"). Your appeal rights are as follows:

1. HEARING: If your injury occurred on or after July 4, 1966, and you have not requested reconsideration, as described below, you may request a Hearing. To protect your right to a hearing, any request for a hearing must be made before any request for reconsideration by the District Office (5 U.S.C. 8124(b)(1)). Any hearing request must also be made in writing, within 30 calendar days after the date of this decision, as determined by the postmark of your letter. (20 C.F.R. 10.616). There are two forms of hearing. You may request either one or the other, but not both.
a. One form of Hearing is an Oral Hearing. An informal oral hearing is conducted by a hearing representative at a location near your home. You may present oral testimony and written evidence in support of your claim. Any person authorized by you in writing may represent you at an oral hearing.
b. The other form of a Hearing is a Review of the Written Record. This is also conducted by a hearing representative. You may submit additional written evidence, which must be sent with your request for review. You will not be asked to attend or give oral testimony.

2. RECONSIDERATION: If you have additional evidence or legal argument that you believe will establish your claim, you may request, in writing, that OWCP reconsider this decision. The request must be made within one calendar year of the date of the decision, clearly state the grounds upon which reconsideration is being requested, and be accompanied by relevant evidence not previously submitted. This evidence might include medical reports, sworn statements, or a legal argument not previously made, which apply directly to the issue addressed by this decision. In order to ensure that you receive an independent evaluation of the new evidence, persons other than those who made this determination will reconsider your case. (20 C.F.R. 10.605-610)

3. REVIEW BY THE EMPLOYEES' COMPENSATION APPEALS BOARD (ECAB): If you believe that all available evidence that would establish your claim has already been submitted, you have the right to request review by the ECAB (20 C.F.R. 10.625). The ECAB will review only the evidence received prior to the date of this decision (20 C.F.R. Part 501). Any request for review by the ECAB should be made within 90 days from the date of this decision. The ECAB may waive failure to file within 90 days if you request review within one year of the date of this decision and show a good reason for the delay.

Case Number: 022503725
Employee: GWENDOLY T. GRAY
Date: January 25, 2006

If you request reconsideration or a hearing (either oral or review of the written record), OWCP will issue a decision that includes your right to further administrative review of that decision.

Case Number: 022503725
Employee: GWENDOLY T. GRAY
Date: January 25, 2006

## APPEAL REQUEST FORM

If you decide to appeal this decision, read these instructions carefully. You must specify which procedure you request by checking one of the options listed below. Place this form on top of any materials you submit. Be sure to mail this form, along with any additional materials, to the appropriate address. YOU MAY ONLY REQUEST ONE TYPE OF APPEAL AT THIS TIME.

_____ ORAL HEARING

Depending on your geographical location, the issue involved in your case, the number of hearing requests in your area, and at the discretion of the hearing representative, we may be able to expedite your appeal by offering you a telephone hearing. If OWCP deems your case suitable for teleconference and you are open to this option, please check here. _____

_____ REVIEW OF THE WRITTEN RECORD

For each of these options, you must submit this form within 30 calendar days of the date of the decision. You may also submit additional written evidence with your request. You must mail your request to:

> Branch of Hearings and Review
> Office of Workers' Compensation Programs
> P. O. Box 37117
> Washington, DC 20013-7117

_____ RECONSIDERATION:

Submit your request within 1 calendar year of the date of the decision. You must state the grounds upon which reconsideration is being requested. Your request must also include relevant new evidence or legal argument not previously made. Mail your request to:

> DOL DFEC Central Mailroom
> P. O. Box 8300
> London, KY 40742

_____ ECAB APPEAL:

Submit this form within 90 calendar days of the date of the decision. No additional evidence after the date of the decision will be reviewed. To expedite the processing of your ECAB appeal, you may include a completed copy of the AB 1 form used by ECAB to docket appeals available on the Department of Labor Web Site at www.dol.gov/ecab. Mail your request to:

> Employees' Compensation Appeals Board
> 200 Constitution Avenue NW, Room N-2609
> Washington, DC 20210

SIGNATURE_____   TODAY'S DATE_____
PRINTED NAME_____   DECISION DATE_____
ADDRESS_____   PHONE_____
CITY _____ STATE_____ ZIP_____

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Staff Judge Advocate General<br>United States Military Academy<br>West Point, New York 10996 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.)  (Number, Street, City, State and Zip Code)<br><br>Gwendolyn Gray<br>127 Johnston Street, P.O. Box 1684<br>Newburgh, New York 12550 |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 10/26/1956 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT 5/18/2005      Wednesday | 7. TIME (A.M. OR P.M.) 7:55 A.M. |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof.  Use additional pages if necessary.)

The claimant, GWENDOLYN GRAY, was caused to sustain severe and serious personal injuries while attempting to enter the United States Military Academy at West Point near the area of the hydraulic barricade at Building #727, Arvin Gym. The claimant stopped to show security guards at the gate her ID as she was employed by the United States Military Academy at West Point. Upon information and belief, a security guard pushed the button to lower the gate and then advised the claimant to proceed. The claimant was caused to move forward striking the gate as same did not lower completely. Upon information and belief, the hydraulic barricade and lights, indicating when it was safe to proceed, were not working at the time of the accident. The claimant was unable to see that the barricade did not fully lower. The security guards should have exercised care in indicating when it was safe for vehicles to proceed through gate.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

The 1999 Lincoln motor vehicle of the claimant, GWENDOLYN GRAY, sustained property damage to the front end as follows: front bumper, grille, headlamp, hood and front fender. The total cost of repairs was $4,423.43. Attached please find copies of estimates.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Claimant sustained severe and serious personal injuries, including but not limited to, rotator cuff tear, traumatic bursitis & impingement, right shoulder requiring debridement of rotator cuff tear, bursectomy, partial acromioplasty; internal derangement of right ankle requiring surgery; bulging disc L1-L2, L2-L3, L3-L4, L4-L5; permanent significant scarring and disfigurement to right shoulder and right ankle.

| 11. | WITNESSES |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Pamela Brown | 228 Grand Street<br>Newburgh, New York 12550 |

RECEIVED
APR 18 2007
07-401-7033

| 12. (See instructions on reverse.) | | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) | |
| $4,423.43 | $3,000,000.00 | | $3,004,423.43 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of person signing form (845) 561-9338 | 14. DATE OF SIGNATURE 4/9/07 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

| 5-109 | NSN 7540-00-634-4046 | STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

rec'd ck
MAY 0 2 2007
USARCS

## INSURANCE COVERAGE

n order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

5. Do you carry accident insurance? [X] Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.   [ ] No

Liberty Mutual
P.O. Box 9045
Farmingdale, NY 11735

Policy # A07-228-058550-70

6. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

[X] Yes        Full Coverage [X]
[ ] No         Deductible [ ]

17. If deductible, state amount.

$500.00

8. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

ne claimant's insurance carrier paid for the property damage to claimant's motor vehicle. The claimant paid the $500.00 deductible as well as an additional
, 150.00 out of pocket.

9. Do you carry public liability and property damage insurance? [ ] Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   [X] No

## INSTRUCTIONS

:laims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose mployee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim orm.

**Complete all items - Insert the word NONE where applicable.**

. CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL GENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL EPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN IOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

ailure to completely execute this form or to supply the requested material within wo years from the date the claim accrued may render your claim invalid. A claim is eemed presented when it is received by the appropriate agency, not when it is nailed.

. instruction is needed in completing this form, the agency listed in item #1 on the reverse ide may be contacted. Complete regulations pertaining to claims asserted under the ederal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Iany agencies have published supplementing regulations. If more than one agency is ivolved, please state each agency.

. he claim may be filed by a duly authorized agent or other legal representative, provided vidence satisfactory to the Government is submitted with the claim establishing express uthority to act for the claimant. A claim presented by an agent or legal representative nust be presented in the name of the claimant. If the claim is signed by the agent or legal epresentative, it must show the title or legal capacity of the person signing and be ccompanied by evidence of his/her authority to present a claim on behalf of the claimant s agent, executor, administrator, parent, guardian or other representative.

. claimant intends to file for both personal injury and property damage, the amount for each nust be shown in item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and oncerns the information requested in the letter to which this Notice is attached.
   A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

   B. *Principal Purpose:* The information requested is to be used in evaluating claims.
   C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
   D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, ncluding the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send omments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: aperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these ddresses.

MAY 0 3 2007

SF 95   BACK



# DEPARTMENT OF THE ARMY
### U.S. ARMY CLAIMS SERVICE
### OFFICE OF THE JUDGE ADVOCATE GENERAL
#### 4411 LLEWELLYN AVENUE
#### FORT GEORGE G. MEADE, MARYLAND 20755-5360

REPLY TO
ATTENTION OF:

MAR 2 5 2008

## VIA FEDERAL EXPRESS

Eastern U.S. Torts Branch

SUBJECT:  Claim of Gwendolyn Gray, 07-401-T033

Debra J. Reisenman, Esq.
Finkelstein & Partners
436 Robinson Avenue
Newburgh, New York 12550-3341

Dear Ms. Reisenman:

This notice constitutes final administrative action on the claim of your client, Gwendolyn Gray, against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., in the amount of $3,004,423.43, the alleged result of personal injury and property damage sustained by Ms. Gray when she drove her motor vehicle into a security barricade at the security gate located at Arvin Gym, West Point, New York, on May 18, 2005.

Your client's claim is denied.  At the time of the alleged incident, your client was on the job as a federal employee of the United States.  The incident forming the basis of your client's claim resulted from her employment.  As a federal employee, alleging an on-the-job injury, your client was covered by the Federal Employees Compensation Act (FECA), Title 5 of the United States Code, Section 8101-8150, which is the exclusive remedy against the United States for personal injury claims of federal employees arising on the job.  Your client filed a FECA claim with the Department of Labor.  While there was a dispute as to the actual version of what transpired between your client and West Point, the Department of Labor did agree that there was an employment incident at the gate.  The fact that your client's FECA claim was determined not to be compensable because the medical evidence did not substantiate that the injury was caused in connection with the otherwise employment related incident does not negate the fact that your client's exclusive remedy was under FECA.  Thus, your client's claim is not compensable under the FTCA.  Title 28 of the United States Code, Sections 2671-2680.

Additionally, the FTCA provides a limited waiver of the federal government's sovereign immunity for certain claims of injury or loss of property when such injury or loss is occasioned by the negligence of a government employee acting within the scope of

-2-

employment.  See 28 U.S.C. § 1346(b).  The legal standards for negligence under the FTCA are determined by the substantive law of the state where the injury occurred.  See Richards v. United States, 369 U.S. 1, 9 (1962).  There is no evidence of negligence on the part of a Government employee acting in the scope of their Government employment.

Our investigation revealed the following.  On May 18, 2005, Ms. Gray was driving her 1999 Lincoln Continental as she attempted to enter the United States Military Academy at West Point (West Point).  Ms. Gray was stopped at the ID checkpoint by a security officer, an employee of Wackenhut Security.  The security guard checked Ms. Gray's Identification Card.  The security guard instructed Ms. Gray to wait because he first had to lower the barrier.  While the security guard was walking over to the area where he needed to be in order to lower the barrier so that Ms. Gray could enter onto West Point, Ms. Gray proceeded forward with her vehicle.  Ms. Gray failed to observe the hydraulic barricade that was raised at the time she elected to proceed through the security gate and she drove into the barricade causing damage to her vehicle and sustaining personal injury to herself.  No Government employee was involved in the encounter between your client and the Wackenhut security guard.  Thus, there is no evidence of any negligence on the part of a Government employee.  The sole proximate cause of the accident was the negligence of Ms. Gray.  Ms. Gray was inattentive and careless in the operation of her vehicle when she drove her vehicle into the barricade that was in an up position, an open and obvious condition which she should have been aware of if she was maintaining a proper lookout.

Furthermore, under the FTCA, the United States is not subject to liability for the negligence of its independent contractors.  28 U.S.C. §2671; United States v. Orleans, 425 U.S. 807, 815 (1976); Logue v. United States, 412 U.S. 512 U.S. 521, 526-528 (1973); and Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997).  Our investigation has established that employees of Wackenhut Security were providing the security at the gate at the time of the accident and that Wackenhut employees were responsible for operating the hydraulic barricades at the time Ms. Gray drove into the barricade.  There is no evidence that Government employees had control of the hydraulic barricades at the time of the alleged incident.  As such, liability, if any, is solely attributable to Wackenhut. Employees of Wackenhut are independent contractors operating under a contract with the Government to provide security guard services to West Point.  Employees of Wackenhut are not employees of the United States and the United States is not responsible for the negligent actions, if any, of its independent contractors.

If your client is dissatisfied with the action taken on her claim, she may file suit in an appropriate United States District Court no later than six months from the date of mailing

-3-

of this letter.  By law, failure to comply with that time limit forever bars your client from
further suit.  I am not implying that any such suit, if filed, would be successful.

Sincerely,

Charles D. Hayes, Jr.
Colonel, U.S. Army
Chief, Tort Claims Division

MILITARY POLICE REPORT
Case 1:08-cv-03333-RWS Document 18-3 Filed 01/09/2008 Page 1 of 2
For use of this form, see AR 190-45; the proponent agency is OCSOPS

PRIVACY ACT STATEMENT

| | |
|---|---|
| AUTHORITY: | Title 10 United States Code Section 301 Title 5 United States Code Section 2951 Executive Order 9397 dated Nov 22, 1943(SSN) |
| PRINCIPAL PURPOSE: | To provide commanders and law enforcement officials with means by which information may be accurately identified. |
| ROUTINE USES: | Your Social Security Number is used as an additional/alternate means of identification to facilitate filing and retrieval. |
| DISCLOSURE: | Disclosure of your Social Security Number is voluntary. |

| MILITARY POLICE REPORT NUMBER 00182-2005-MPC081 | DATE(YYYY/MM/DD) 2005/05/18 | ORI NUMBER NYUSA16DM | USACRC CONTROL NUMBER |
|---|---|---|---|

THRU:

| TO: COMMANDER<br><br>WEST POINT,NY US 10996 | FROM: ATTN: PROVOST MARSHAL OFFICE<br>616 SWIFT ROAD<br>WEST POINT, NY US 10996 |
|---|---|

## Section I - Administration

| REPORT TYPE: | 3. EVALUATION: | 4c. COMPLAINT RECEIVED BY: | 5a. CLEARANCE REASON: | 5b. EXCEPTIONAL CLEARANCE DATE: (YYYY/MM/DD): |
|---|---|---|---|---|
| [ ] Information<br>[ ] Traffic<br>[ ] Military Offense<br>[ ] Criminal<br>[ ] Complaint | [X] Founded<br>[ ] Unfounded | [ ] In person<br>[ ] 911<br>[ ] CB<br>[X] Telephone<br>[ ] Mail<br>[ ] Radio<br>[ ] Crime Stoppers<br>[ ] Alarm<br>[ ] Other (Specify): | [ ] A Death of Offender<br>[ ] B Prosecution Declined<br>[ ] C Extradition Declined<br>[ ] D Victim Refused To<br>[ ] E Juvenile, No Custody<br>[ ] U Unfounded<br>[ ] X Apprehension | |
| | 4a. COMPLAINT DATE: (YYYY/MM/DD): 2005/05/18 | | | 7. INVOLVEMENT:<br>[ ] Hate [ ] Domestic<br>[ ] Death [ ] Gang<br>[ ] Trainee [ ] Extremist |
| STATUS:<br>[ ] Initial<br>[ ] Supplemental<br>[ ] Cdr's Action | 4b. COMPLAINT TIME: (24hr.): 0755 | | 6a. MP ACTION:<br>[ ] MPI [X] Traffic<br>[ ] CID [ ] Other (Specify)<br>[ ] Civil Authorities | 6b. DATE REFERRED: (YYYY/MM/DD): 2005/05/18 |

## Section II - Offense

| OFFENSE NO. 1 | 1b. SUBJECT NO. INVOLVEMENT: 1 | 1c. VICTIM NO. INVOLVEMENT: 1 | 1d. NIBRS LOCATION CODE: 13 | 1e. [ ] Attempted [X] Completed | 1f. SAME OFFENSE DATA FOR ALL OFFENSE CODES: [ ] Yes [X] No (See 3975-1) |
|---|---|---|---|---|---|

| OFFENSE CODE(s): 5Q4B1 | 1h. OFFENSE DESCRIPTION(s):<br><br>TRAFFIC ACCIDENT/VEHICLE TO OBJECT/WITH INJURIES (DRIVING ON ROADWAYS LANED FOR TRAFFIC, NYV&TL 1128 (A)) (ON POST) | 1i. OFFENSE LOCATION ADDRESS:<br><br>BREWTON ROAD ADJ BLDG #757 (ARVIN GYM)<br>WEST POINT, NY US 10996 |
|---|---|---|

| BEGIN DATE: (YYYY/MM/DD): 2005/05/18 | 3. TYPE OF CRIMINAL ACTIVITY (Check Up To Three): | 4. OFFENSE STATUTORY BASIS: | 5. OFFENDER USED (Check Up To Three) |
|---|---|---|---|
| BEGIN TIME (24hr.): 0755 | [ ] B Buying/Receiving<br>[ ] C Cultivating/Manufacturing/Publishing<br>[ ] D Distributing/Selling<br>[ ] E Exploiting Children<br>[X] O Operating/Promoting/Assisting<br>[ ] P Possessing/Concealing<br>[ ] T Transporting/Importing<br>[ ] U Using/Consuming | [ ] A UCMJ<br>[ ] B Non-Criminal Fatality<br>[X] C State<br>[ ] D Local<br>[ ] E Foreign<br>[ ] F Federal, Non-UCMJ | [ ] A Alcohol<br>[ ] C Computer Equipment<br>[ ] D Drugs/Narcotics<br>[X] N Not Applicable |
| END DATE: (YYYY/MM/DD): 2005/05/18 | | | |
| END TIME (24hr.): 0756 | | | |

### NATIONAL INCIDENT BASED REPORTING SYSTEM (NIBRS) LOCATION CODES

| | | |
|---|---|---|
| 01 Air/Bus/Train Terminal | 10 Field/Woods/Training Area | 19 Rental/Storage Facility |
| 02 Bank/Credit Union | 11 Government/Public Building | 20 Residence/Quarters/Barracks/BEQ/BOQ |
| 03 Bar/Officer/NCO Club | 12 Grocery Store/Commissary | 21 Restaurant/Dining Facility |
| 04 Church/Synagogue/Temple | 13 Highway/Road/Alley/Street | 22 School/College |
| 05 Commercial Office Building | 14 Hotel/Motel/VAQ/VEQ/TLQ | 23 Service/Gas Station |
| 06 Construction Site | 15 Jail/Prison/Corrections Facility | 24 Specialty Store/Concessionare |
| 07 Convenience Store/Shoppette | 16 Lake/Waterway/Ocean | 25 Child Care Facility/Home Day Care |
| 08 Dept/Discount Store/Exchange | 17 Liquor/Store/Class VI | 26 Recreation Area/Park |
| 09 Drug Stor/Hospital/Clinic | 18 Motor Pool/Parking Lot/Garage | 27 Training Center/Service School | 28 On Board Ship |

AT 0755 HRS, 18 MAY 05, THE COMPLAINANT (RIVERA) TELEPHONICALLY NOTIFIED THIS STATION OF A TRAFFIC ACCIDENT.   INVESTIGATION BY PTL #16/CM (OLIVEIRA/STITH) REVEALED THAT VEHICLE #01 (1999 LINCOLN CONTINENTAL, NY REGS #CEA1364, DOD DECAL #MYM887) OPERATED AND OWNED BY THE SUBJECT (GRAY), FAILED TO OBSERVE AND STRUCK THE HYDRAULIC BARRICADE, WHILE BEING LOWERED AT THE ABOVE LOCATION.   A ROUTINE CHECK THROUGH NYSPIN REVEALED THAT VEHICLE #01'S REGISTRATION WAS SUSPENDED.  VEHICLE #01 WAS LEGALLY PARKED, SECURED, AND BOOTED ADJ.  BLDG #745 (MAC ARTHUR BARRACKS).   GRAY AND WITNESS #01 (BROWN), COMPLAINED OF MINOR CHEST PAIN, BUT DENIED MEDICAL ATTENTION.   GRAY WAS APPREHENDED BY PTL #11 (STEPHENS) AND TRANSPORTED TO THE MILITARY POLICE STATION WHERE SHE WAS ADVISED OF HER LEGAL RIGHTS ON A DA FORM 3881, WHICH SHE WAIVED RENDERING A WRITTEN SWORN STATEMENT.   GRAY WAS CITED ON ONE (1) DD FORM 1805 FOR THE ABOVE OFFENSE WITH A MANDATORY COURT DATE OF 21 JUL 05. GRAY WAS FURTHER PROCESSED AND RELEASED ON HER OWN RECOGNIZANCE.   DAMAGE TO VEHICLE #01 CONSISTED OF THE FRONT GRILL BEING BROKEN AND HOOD SLIGHTLY RAISED.   THERE WAS NO DAMAGE TO THE HYDRAULIC BARRICADE.   ESTIMATED COST OF DAMAGE IS UNKNOWN.   THERE WERE NO INDICATIONS OF DRUG OR ALCOHOL INVOLVEMENT, OR REPORTS OF INJURY.   THIS IS A FINAL REPORT.

DISPOSITION:
SUBJECT: CITED AND RELEASED
VEHICLE #01: LEGALLY PARKED, SECURED AND BOOTED ADJ BLDG #745 (MAC ARTHUR BARRACKS).

NOTIFICATIONS:
OPNS: SSG WOODARD AT 0900 HRS.

| 1. Enclosures: | 2. Distribution: | 3. Name: |
| --- | --- | --- |
| S1 G. GRAY : SWORN STATEMENT (DA 2823) [1] | | DAVID PARAVECCHIA |
| S1 G. GRAY : RIGHTS WAIVER (DA 3881) [1] | 1-FILE | |
| S1 G. GRAY : VIOLATION NOTICE (DD 1805) [1] | 1-SJA | 4. Grade: |
| P3 P. MALDONADO : SWORN STATEMENT (DA 2823) [1] | | O-3 |
| P2 P. BROWN : SWORN STATEMENT (DA 2823) [1] | | |
| P5 C. STITH : TRAFFIC ACCIDENT REPORT (DA 3946) [1] | | 5. Title Of Reporting Official: |
| P5 C. STITH : INV STMT INVESTIGATORS STATEMENT [1] | | OPERATIONS OFFICER |
| P5 C. STITH : PC PHOTO (S) [8] | | |
| P6 F. OLIVEIRA : INV STMT INVESTIGATORS STATEMENT [1] | | 6. Signature: |
| P4 E. STEPHENS : SWORN STATEMENT (DA 2823) [1] | | |

# *First Mercury Insurance Company*

July 13, 2007

Ms. Susan Cariffe
Finkelstein & Partners
436 Robinson Ave.
Newburgh, NY 12550

Re: Gwendolyn T. Gray
    Date of Loss: 5/18/2005
    Our Insured: Afognak Native Corp/Alutiiq, LLC
    Our File No: 10112

Dear Ms. Cariffe:

As you know, First Mercury Insurance Company is the Commercial General Liability carrier for Afognak Native Corp/Alutiiq, LLC. We have completed our investigation. It is our understanding that on May 18, 2005 your client Gwendolyn Gray was entering the West Point Military Academy. Your client was well versed on the required protocol and procedures in entering the Academy. She had been employed for 2 months at this location and entered and exited during that time. She was aware of the barrier.

We interviewed the guard on duty that day, he advised his back was to Ms. Gray and had only taken a few steps when she ran into the barrier. She clearly knew the barrier was there and in the up position. As well it was discovered she was driving on an expired license. There was no way for our guard to have lowered the barrier as he had not returned to the guard shack. She clearly moved forward on her own. We must respectfully deny liability for the injuries alleged to have been sustained by Ms. Gray. While we regret that the outcome of our investigation was not more favorable, if you have any further information that would change our position, please feel free to submit for our consideration.

Sincerely,
*First Mercury Insurance Company*

Anita M. Thornell
Claim Specialist III

Sandra Norris
Liberty Mutual
P.O. Box 9004
Central Islip, NY 11722

Afognak Native Corp/Alutiiq, LLC
3201 C. Street Ste. 600
Anchorage, AK 99503

| **AWARD/CONTRACT** | 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | | RATING | PAGE | OF PAGES |
|---|---|---|---|---|---|
| | | | | 1 | 61 |

| 2. CONTRACT (Proc. Inst. Ident) NO. DABJ01-03-D-0014-F00019 | 3. EFFECTIVE DATE 29 Jul 2003 | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. SEE SCHEDULE |
|---|---|---|

| 5. ISSUED BY                CODE  W911S0 | 6. ADMINISTERED BY  (If other than Item 5)     CODE |
|---|---|
| NRCC GENERAL SUPPORT DIVISION<br>2768 HARRISON LOOP<br>FORT EUSTIS VA 23604 | See Item 5 |

| 7. NAME AND ADDRESS OF CONTRACTOR  (No., street, city, county, state and zip code) | 8. DELIVERY |
|---|---|
| ALUTIIQ SECURITY & TECHNOLOGY<br>RICHARD HOBBS<br>737 VOLVO PKWY<br>STE 120<br>CHESAPEAKE VA 23320 | [ ] FOB ORIGIN  [ X ] OTHER  (See below) |

9. DISCOUNT FOR PROMPT PAYMENT
Net 30 Days

| 10. SUBMIT INVOICES | ITEM |
|---|---|
| (4 copies unless otherwise specified)<br>TO THE ADDRESS<br>SHOWN IN: | Block 12 |

| CODE  1Y0D7 | FACILITY CODE |
|---|---|

| 11. SHIP TO/MARK FOR          CODE  IMA001 | 12. PAYMENT WILL BE MADE BY          CODE  HQ0105 |
|---|---|
| INSTALLATION MANAGEMENT AGENCY<br>JOHN E NIMITZ<br>RM 11E08<br>2531 JEFFERSON DAVIS HWY<br>ARLINGTON VA 22202-3926 | DFAS INDIANAPOLIS CENTER<br>DNO VENDOR PAY DIVISION<br>DEPT 3800<br>8899 56TH ST<br>INDIANAPOLIS IN 46249-3800 |

| 13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:<br>[    ] 10 U.S.C. 2304(c)(    ) [    ] 41 U.S.C. 253(c)(    ) | 14. ACCOUNTING AND APPROPRIATION DATA<br>See Schedule |
|---|---|

| 15A. ITEM NO. | 15B. SUPPLIES/ SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | **SEE SCHEDULE** | | | | |
| | 15G. TOTAL AMOUNT OF CONTRACT | | | | $814,000,000.00 |

**16. TABLE OF CONTENTS**

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | **PART I - THE SCHEDULE** | | | | **PART II - CONTRACT CLAUSES** | |
| X | A | SOLICITATION/ CONTRACT FORM | 1 | X | I | CONTRACT CLAUSES | 55 - 61 |
| X | B | SUPPLIES OR SERVICES AND PRICES/ COSTS | 2 - 28 | | | **PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS** | |
| X | C | DESCRIPTION/ SPECS/ WORK STATEMENT | 29 - 47 | J | | LIST OF ATTACHMENTS | |
| | D | PACKAGING AND MARKING | | | | **PART IV - REPRESENTATIONS AND INSTRUCTIONS** | |
| X | E | INSPECTION AND ACCEPTANCE | 48 - 49 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 50 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 51 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 52 - 54 | | M | EVALUATION FACTORS FOR AWARD | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE

| 17. [    ] CONTRACTOR'S NEGOTIATED AGREEMENT  Contractor is required to sign this document and return _____ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.) | 18. [    ] AWARD  (Contractor is not required to sign this document.) Your offer on Solicitation Number DABJ01-03-R-0066-0001 including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary. |
|---|---|
| 19A. NAME AND TITLE OF SIGNER  (Type or print) | 20A. NAME AND TITLE OF CONTRACTING OFFICER<br>ABRA N. SMITH / CONTRACTING OFFICER<br>TEL: 757-878-3166 3269     EMAIL: abra.smith@us.army.mil |
| 19B. NAME OF CONTRACTOR | 19C. DATE SIGNED | 20B. UNITED STATES OF AMERICA | 20C. DATE SIGNED |
| BY _____<br>(Signature of person authorized to sign) | | BY *Abra Smith*<br>(Signature of Contracting Officer) | 30-Jul-2003 |

| NSN 7540-01-152-8069 | 26-107 | | STANDARD FORM 26 (REV.  4-85) |
|---|---|---|---|
| PREVIOUS EDITION UNUSABLE | | GPO 1985 O - 469-794 | Prescribed by GSA<br>FAR (48 CFR) 53.214(a) |

DABJ01-03-D-0014
P00019
Page 29 of 61

Section C - Descriptions and Specifications

PERFORMANCE WORK STATEMENT
PERFORMANCE WORK STATEMENT (PWS)
27 July 2004

## C.1.    GENERAL.

C.1.1.    Scope of Work.  The Contractor shall furnish all personnel, equipment, and supplies, except as specified herein as Government furnished, to provide security guard services within the Continental United State (CONUS) and Hawaii and Alaska and U.S. Territories.  Specific/unique installation requirements will be described in the PWS for individual Task Orders.  Local Installation will provide maps of the installation - to the contractor prior to the start of Full Performance.  Contractor performance will be in accordance with this PWS as augmented for installation specific requirements.

C.1.1.1.    The primary objective of the PWS is to facilitate the overall security of Installations and activities by employing contractor personnel to augment existing security forces.

C.1.2.    Standards of Conduct.  The Contractor shall maintain satisfactory standards of employee competency, conduct, appearance, and integrity, and take such disciplinary action against an employee as may be necessary.  Each Contractor employee is expected to adhere to standards of conduct that reflect credit on themselves, their employer, and the U.S. Army.  Each contractor employee performing security guard duties shall meet the reliability standards of the Individual Reliability Program defined in Chapter 3 of AR 190-56.  The Government has the right to bar a contractor employee from, or restrict access to the workplace, for any reason.  This right is in addition to any other Government right or remedy under the contract and does not relieve the contractor from its obligation to perform the requirements stipulated in the contractor and/or individual Task Order.

C.1.3.    Performance Period.  The Contractor will have no more than a 90-day period from the date of Task Order issuance to transition to Full Performance.  Full performance shall commence no later than day 91 after Task Order issuance and will continue through the period specified in the Task Order.  The last 30 days of the initial 90-day transition period will be set-aside for Garrison specific training, contractor start-up and transition required to ensure successful assumption of Full Performance.  The contractor shall notify the Contracting Officer of the exact date they will commence the transition period and exact date they will assume Full Performance.   Full Performance for all follow-on Task Orders will commence on the Effective Date of the Task Order unless other wise specified.

## C.2.    DEFINITIONS AND ACRONYMS.

CONTRACTING OFFICER'S REPRESENTATIVE.  An individual designated in writing by the Contracting Officer to act as an authorized representative within the scope and limitations authorized by the Contracting Officer.

CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE (COTR).  An individual at a specific installation designated in writing by the Contracting Officer to act as an authorized representative within the scope and limitations authorized by the Contracting Officer.

CONTROLLED AREA/SECURED AREA.  Any specifically designated building, area of structure, containing lucrative targets for theft, compromise, or destruction and to which entry must be limited in order to provide more than routine protection.

PROCEDURES MANUAL.  A comprehensive narrative description of the Contractor's management, training, and operations written by the Contractor and accepted by the Contracting Officer.

DABJ01-03-D-0014
P00019
Page 30 of 61

QUALITY CONTROL. Those actions taken by a Contractor to control the production of goods or services so that they will meet the requirements of the PWS.

SPECIAL ACCESS AREA. Any areas to which access is strictly limited and is controlled by personnel of the individual activity or is controlled by cipher lock/combination lock devices on entrance to that area.

SPECIAL ORDERS. Designated list of buildings to be patrolled in a given area and any other special instructions for daily operation.

C.3.    GOVERNMENT FURNISHED PROPERTY

C.3.1.    The Government will provide to the Contractor for use in connection with Task Orders issued under this contract the following property. Government property made available will be for use in the performance of the resulting Task Order only.

C.3.1.1.    Class A telephones for use in official contract requirements.

C.3.1.2.    Heat, light, and other utilities.

C.3.1.3.    Security guard working space to include sentry stations with furniture necessary to perform the governmental mission to include guard mount room/area, sentry stations (i.e. guard shacks, ACP posts, vehicle inspection points etc.) and administrative offices for the Chief and Captain of the Guards.  Conference/Team room must be available to Contract Security Guard (CSG) personnel though this does not have to be dedicated facility.

C.3.1.4.    Standard US Army and Government forms and regulations.

C.3.1.5.    E-mail and Internet access, for official contract requirements, for the Chief of the Guard and each Shift Supervisor.

C.3.1.6.    Telefax capability.

C.3.1.7.    A Government Identification Card will be issued, if required.

C.3.1.8.    Any weapons, except for duty service pistol, pepper spray, and shotgun, and will provide training associated with the Government provided weapons.

C.3.1.9.  Security radios, mobile and portable telephones, as required.

C.3.1.10.    Security vehicles for mobile vehicle patrols and all associated maintenance and operating costs.

C.3.2.    Reserved.

C.3.3.    The Government will provide all keys to doors necessary for the security guards to perform their duties.

C.3.4.    The Government will provide normal maintenance, repair of the property furnished (sentry stations, buildings or administrative areas) and janitorial/custodial services to the Contractor.  Duty posts will be maintained in a safe, orderly and clean condition on a daily basis by the contract guard force.

C.3.5.    All property furnished by the Government under the Task Order will remain the property of the Government.  All Government furnished items will be hand receipted to the Chief of Guards or his/her

DABJ01-03-D-0014
P00019
Page 31 of 61

authorized representative. Accountability will be maintained IAW AR 710-2. The hand receipt holder will update hand receipts with TDA Property every six months and will perform a complete physical inventory every twelve months.

C.3.6.   Electronic security systems, to include control panels, transmission lines, other related equipment, and adequate maintenance services, will be provided by the Government when required.

C.3.7.   Firearms training range. The Government will provide access to a firearms training range. The Contractor shall establish, coordinate and submit a proposed schedule with the Contracting Officer Technical Representative prior to utilizing the firearms training range.

C.3.8.   The Government will furnish as required classroom space for in-service training for approximately 35% of the workforce, and for 100% of the workforce during the startup of a new task order.

C.3.9.   The Government will furnish an approved arms/ammunition storage facility(ies)/area(s) on the installation to include necessary racks, containers, locks and chains. The Contractor shall be responsible for operation of the storage facility(ies) IAW AR 190-11. The Contractor will store all Contractor-owned arms and ammunition in these facility(ies)/area(s).

C.3.10.  M-16 Rifles. Arms, ammunition, direct support maintenance, facility to store, and facilities for training and weapons qualification are the responsibility of the Government.

**C.4.    CONTRACTOR FURNISHED PROPERTY**

C.4.1.   Contractor Furnished Individual Security Guard Equipment. The Contractor shall furnish the necessary initial and replacement items for uniforms of the design, material, and color as approved by the Contracting Officer. All contractor employees will wear the appropriate uniform for duties assigned.

C.4.1.1. The contractor will furnish the necessary initial and replacement items for a uniform of a design, material, and color approved by the contracting officer. This uniform will include a badge, a patch displaying the name of the contractor, and a nametag and rank for the individual employee that will be prominently displayed on the outer garment. The contractor will also be required to provide uniform clothing for use during foul weather, such as rain, sleet, snow, and extreme cold, meeting the requirements stated above.

C.4.1.2. In accordance with AR 190-56 and AR 670-10, the Standards and Specifications for Contract Security Guards uniforms will be as follows.

C.4.1.2.1. Shirt:

a.  The winter shirt will be light blue in color and long sleeve with a collar. The winter shirt will be worn with a tie and tucked into the trousers.

b.  The summer shirt will be light blue in color and short sleeve with a collar. Shirt will be worn without a tie, an open collar, and tucked into the trousers

c.  The supervisor's shirt will be of the same design and will be worn in the same manor as the summer and winter shirts worn by the guards except they will be white in color.

C.4.1.2.2. Trousers:

Trousers will be navy blue in color and will have two hip pockets and two side pockets. Trouser leg will be straight cut, no cuff, slant bottoms so as to be ½ longer in the back than in the front. The waistband will be approximately 1 ½ inch wide; it will be affixed with 2-inch (approximate

DABJ01-03-D-0014
P00019
Page 32 of 61

measurement) belt straps. The trousers will be worn with a waist belt. As an option Bermuda shorts maybe worn in hot climates during spring and summer, however the entire work force at an installation must be in the same uniform, i.e. either long or short trousers while on duty.

C.4.1.2.3. Optional Utility Uniform:

If funds are provided by the Installation to purchase this uniform, at the direction/approval of the Installation Commander, guards may wear a utility type uniform with dark blue cargo pants and matching dark blue cargo shirt with four, front pockets (2 pockets on either side, one upper, and one lower). The shirt will be worn with an open collar and outside the trouser. A navy blue tee shirt will be worn under the shirt. Sewn on the upper, left breast pocket will be a cloth security guard's badge. The utility belt will be worn over the shirt around the waist. Again as with other optional uniforms, the entire work force at an installation must be in the same duty uniform.

C.4.1.2.4. Footwear:

Shoes will be made of leather with standard heels and of a low quarter cut. Shoes will be black in color and will be worn with black socks. As an optional uniform black leather, lace-up boots maybe worn. The entire work force at an installation must be in the same duty uniform.

C.4.1.2.5. Neckties:

Neckties will be plain, navy blue in color, four-in-hand; leather ties are prohibited. Clip on ties are permitted.

C.4.1.2.6. Waist Belt:

Waist Belt will be plain black leather or cloth-weaved material with a conventional buckle.

C.4.1.2.7. Name Tags:

Nametags will be worn above the right breast pocket on all configurations of CSG uniforms except the utility uniform. The nametag will be 1-by 3- by 1/16-inch with black background and white border not to exceed 1/32-inch in width. They will be laminated plastic, non-gloss finish and the letters will be blocked type 3/8 inch in height, white in color and centered on the plate. An optional name plate maybe of a gold background with black letters. The nameplate will be visible on all uniforms excluding the raincoat. The entire work force at an installation must use the same type nameplate.

A cloth, 1 inch wide, name tape will be sewn above the right breast pocket along the upper seam of the pocket on the optional utility uniform, or any cold weather outer coat that is of too heavy a material to use a name tag. The tape will be even and aligned with the edges of the pocket. The name will be in black letters with a blue (matching the shade of blue in the utility uniform) background.

C.4.1.2.8 Insignia:

    a.   CSG company insignia will be worn on the left shoulder (1/4 inch down from the seam). It may be worn on the badge and or headgear if desired by contractor. The insignia will be visible on all uniforms worn by the CSG, excluding raincoats.

    b.   A badge identifying the CSG as such will be worn on the left breast pocket of all configurations of the CSG uniforms. With exclusion of the raincoat.

DABJ01-03-D-0014
P00019
Page 33 of 61

    c.   All supervisors will display their rank on all configurations of their uniforms and will be visible at all times.

    d. Optionally, an American flag (2 inches by 3 1/4 inches) will be worn on the right shoulder of the uniform.   The entire work force at an installation must use the same configuration of insignia.

C.4.1.2.9 Headgear:

    a.   The summer headgear will be of a baseball style hat. It may have the CSG company logo centered on the front of the hat. It will be navy blue in color. It will be worn level on the head with the brim being approximately 1-½ inches from the eyebrow.   To allow for maximum ventilation in very hot weather, the rear 2/3rd of the ball cap maybe a net type material

    b.   The winter headgear will be of a knit wool or cotton mix, it will be navy blue in color, commonly called a knit cap. It will be worn over the ears and approximately 1 inch from the eyebrow and will be folded one time from the end of the cap. The fold will overlap onto the cap approximately 2 inches. The CSG Company's logo may be worn, centered on the fold so it is clearly visible when viewed from the front.

C.4.1.2.10 Cold weather uniform:

    a.   The CSG Company is responsible for providing a sufficient cold weather uniform to protect the CSG from the elements.  The outer uniform will be navy blue and will be equipped with the badges, CSG company logo and rank required of all other configurations of the uniforms.   As weather conditions dictate, the cold weather uniform may also include:

        1) Parka with hood.

        2) Ski pants.

        3) Black turtle neck sweater worn underneath the duty shirt.  The necktie will not be worn if the turtle neck is worn.

        4) Black knit balaclava.

    b.   Winter gloves will be black leather.   Heavyweight material, which would interfere with proper use of weapons, is not authorized.  Summer gloves if worn will be of lightweight, white in color material only.

    c.   All CSG employees will wear rain gear during time of rainfall. The rain gear will be ether yellow, orange or black in color. The raincoat will button or zip in the front and will be long enough to cover the CSG from his shoulders to approximately 6 inches from his feet.  As an option, the length of the raincoat will be to the mid of the thigh if rain pants are worn on the legs. If a black raincoat is used, orange or yellow reflectorize material must be visible on the arms and upper body.  While wearing the raincoat the CSG's must have ready access to the duty belt, therefore, left and right hand openings at waist level must be in the sides of the raincoat sufficient to provide that access.  All members of the on duty guard force at a specific installation will wear the same raingear.

C.4.1.2.11.  Duty Belt

DABJ01-03-D-0014
P00019
Page 34 of 61

The duty belt will be of webbed cloth, dark navy/black in color, with appropriate holster, flashlight holder, ammunition carriers, and handcuff case.

C.4.1.2.12. Pepper Spray (CAPISON) (pepper spray cannot be CS or CA) will be carried on the duty belt

## C.4.1.2.13. Flashlight will be carried or readily available.

## C.4.1.2.14. Reflective safety vest

## C.4.1.2.15. Nightstick or police baton will be carried on the duty belt

## C.4.1.2.16. Handcuffs will be carried on the duty belt

## C.4.1.2.17. Body Armor, level II will be worn under the shirt.

C.4.1.2.18. Weather and safety conditions maybe dictate a change in uniforms as outlined above. However, the entire shift of the guard force must appear in the same uniform for the particular day. If weather conditions change during a particular shift, the entire shift will change to the uniform necessitated. The requirement is to have all members of the guard force in the same uniform at any one particular point in time. Because of liability issues, the Body Armor must be worn regardless of weather condition. This provision also applies to the carrying of handcuffs, pepper spray, impact weapon or flashlight.

C.4.1.2.19. The Standards and Specifications for Contract Security Guards uniforms will be precisely followed. Any deviation must be summated thru the Contracting Officer Representative to the Contracting Officer. Only the Contracting Officer can sanction deviation.

C.4.2.    The contractor shall provide all vehicles and transportation for their employees to and from the guard site and for supervisory personnel.

C.4.3.    Employee Identification. The contractor employee's performing work under this contract shall display on their person a contractor furnished photo identification card at all times. If asked to identify themselves, they are to state their name and their company's name. The contractor shall identify themselves as contractors when answering Government telephones and state the name of their company.

C.4.4.    The Contractor shall furnish the appropriate weapon as required in this PWS for each individual installation. Security of the weapons is the responsibility of the Contractor. The Contractor shall comply with the policies of AR 190-14 and AR 190-11. Contract guards shall carry only those type weapons for which they were trained and which are contractor and/or government provided. Privately

DABJ01-03-D-0014
P00019
Page 35 of 61

owned weapons are prohibited for use under this contract. Firearms and ammunition shall be turned in at the end of tour of duty. Employees shall not be permitted to retain firearms or ammunition after completing duty.

C.4.5.    The Contractor shall provide hand-held battery operated spotlights with sufficient batteries for employee training and operational requirements.

C.4.6.    The Contractor shall furnish, equip, install, operate, repair, and maintain in acceptable condition all equipment, materials, and supplies necessary for performance under this contract including.

C.4.7.    Reserved.

C.4.8.    The following special required items are to be furnished by the Contractor.

  C.4.8.1.    Office supplies necessary for performance of the contract, to include all paper, pencils, office forms, and other general office supplies.

  C.4.8.2.    Weapons. The Contractor shall provide each individual assigned as an armed guard with appropriate weapons, as defined below. Use of privately owned weapons is prohibited. Armed security guards shall be trained on and qualified with the type weapon that they are issued. Guards shall not carry concealed weapons while on the Government installations, even if they are licensed to do so while off the installation.

    C.4.8.2.1.    Duty Service Pistol. The Contractor shall provide each individual assigned as an armed guard with a standard handgun 9mm semi-automatic.

    C.4.8.2.2.    Shotguns. The use of 12-gauge pump Shotguns by Contractor Armed Guards is authorized only if required by the Task Order.

  C.4.8.3.    Ammunition. The Contractor shall furnish and supply all ammunition required for use under this contract to include training ammunition except for M-16 requirements. Ball ammunition shall be used for handguns. OO buckshot will be used for shotguns. The Contractor is responsible for security of all ammunition.

  C.4.8.4.    Duty Service Pistol. Each guard will be issued sufficient ammunition for a full magazine in the weapon and two (2) full spare magazines. Spare ammunition magazines will be carried in an ammunition pouch on the guard's belt. The duty weapon will be carried loaded, except that a round will not be chambered.

  C.4.8.5.    Shotguns. Each guard who is armed with a shotgun will be issued sufficient ammunition for a full magazine (the chamber shall be empty) and additional for another full magazine (at a minimum). Ammunition for reload will be carried on the guard's person or appropriately affixed t the weapon. The shotgun will be carried, loaded, except that a round will not be chambered, unless required  - by the local Garrison Commander.

  C.4.8.6.    Storage, maintenance and accountability of contractor supplied weapons and ammunition within the Government provided storage facility is the responsibility of the contractor.

C.4.9.    The Government shall not be responsible, in any way, for damage to the Contractor's supplies, materials, equipment, or employees; personal belongings brought into the building or onto the grounds damaged due to fire, theft, accident, or other disaster.

DABJ01-03-D-0014
P00019
Page 36 of 61

C.5.    **PERSONNEL REQUIREMENTS**

   C.5.1.    Personnel.

      C.5.1.1.    Reserved

      C.5.1.2.    The Contractor shall furnish fully trained and qualified personnel to accomplish all work as identified in the PWS and IAW AR 190-56.    All Contractor personnel shall be employees of the Contractor at all times and not employees of the US Government.    Contractor personnel qualifications are as follows:

         C.5.1.2.1.    Shall be a US citizen.

         C.5.1.2.2.    Guards shall be at least 21 years of age.

         C.5.1.2.3.    Shall speak, read, write and understand English.

         C.5.1.2.4.    Shall have a valid state driver's license.

         C.5.1.2.5.    Shall be able to pass the medical, physical, and reliability requirements outlined in C.5.2, C.5.9, and C.5.10.

         C.5.1.2.6.    Shall have undergone the security screening processes as required in C.5.3 with satisfactory results, and shall meet all standards of the Individual Reliability Program (IRP) as specified in paragraph C.5.2.

   C.5.2.    Individual Reliability Program (IRP). (See AR 190-56, Chapter 3).

      C.5.2.1.    The IRP provides a means of assessing the reliability of individuals being considered for employment, and continuous assessment of personnel employed as contract security guards.    It is a supplement to the employee security screening process.    All personnel performing contract security guard duties shall be continuously evaluated to determine if their character, trustworthiness, and fitness are consistent with the high standards expected of the security professional.    All individuals performing contract security guard duties shall meet the reliability standards of the IRP.

      C.5.2.2.    The IRP is considered a condition of employment and applies to prospective employees tentatively selected for contract security guard positions, as well as current employees in those positions.

      C.5.2.3.    Disqualifying factors for contract security guard duties.    Examples of disqualifying medical conditions, traits, or behavioral characteristics are listed below.

         C.5.2.3.1.    Loyalty:    Any behavior or knowing membership in an organization that unlawfully advocates the overthrow of the Government of the United States.

         C.5.2.3.2.    Foreign preference/connections:    Any behavior or acts, which would be considered serving the interests of another government in preference to the interests of the United States.    Any behavior that would make the individual vulnerable to coercion, influence, or pressure that may cause conduct contrary to the national interest.

DABJ01-03-D-0014
P00019
Page 37 of 61

C.5.2.3.3.    Any behavior that disregards public law, statutes, executive orders, or regulations, including violation of security regulations or practices or unauthorized disclosure of classified information.

C.5.2.3.4.    Criminal misconduct: Court-martial convictions; civil conviction of a serious nature (felony), or equivalent disciplinary actions; or a pattern of behavior or actions reasonably indicative of a contemptuous attitude toward the law or other duly constituted authority.

C.5.2.3.5.    Mental or emotional disorders: Any significant physical or mental condition, substantiated by competent medical authority, that may impair the individual/s ability to perform assigned duties, or any character trait, or aberrant behavior that the certifying official believes is prejudicial to reliable performance of the duties of a security guard position.

C.5.2.3.6.    Financial matters: Excessive indebtedness, recurring financial difficulties, or unexplained affluence.

C.5.2.3.7.    Alcohol and drug abuse. Any possession, use, or distribution of alcohol or drugs that adversely affects reliability or job performance. Persons medically diagnosed as alcohol or drug dependent may not be selected for, or retained under this contract. The certifying official on a case-by-case basis will evaluate other instances of substance abuse. Those persons disqualified for substance abuse are not eligible for re-qualification until satisfactory completion of the Alcohol and Drug Abuse Prevention and Control Program, as outlined in AR 600-85, or a civilian equivalent.

C.5.2.3.8.    Falsification/refusal to answer: Any knowing and willful falsification, cover-up, concealment, misrepresentation, or omission of material used by DoD or any other Federal agency. Failing or refusing to answer or to authorize others to answer questions or provide information required by a Congressional committee, court, or agency in the course of an official inquiry when information is relevant to the evaluation of an individual's reliability.

C.5.2.3.9.    Work Performance: Any behavior that is considered negligence, insubordination, or delinquency in performance of duty.

C.5.3.    Employment Security Screening.

C.5.3.1 The Contractor shall take necessary steps to ensure persons employed possess basic character traits as listed in C.5.2 Individual Reliability Program (IPR) and the requirements of 18 USC 922, the Lautenberg Amendment. Additionally, personal background qualities such as good conduct, good character, integrity, dependability, and good mental/physical fitness are essential. The contractor will conduct a local agency check (LAC). IAW AR 380-67 the Contractor will conduct the following screening procedures for all his/her employees performing contract guard functions prior to being offered employment:

a. Local check of arrests and history check of criminal and/or civil court files in the jurisdiction where the applicant has resided during the most recent five-year period.

b. Check with former employers, former supervisors, former educators, and personal references.

c. Check the applicant's educational records.

d. Check financial credit history.

DABJ01-03-D-0014
P00019
Page 38 of 61

C.5.3.2.  Conditional employment.  Employees may commence work upon receipt of the contractor's, favorable Local Agency Check (LAC) and submission of the results, as well as the results of the medical screening, and physical agility test, through the Contracting Officer's Technical Representative (COTR) to the respective installation's Certifying Official for the IRP IAW AR 190-56.  Employees denied certification IAW AR 190-56 by the Certifying Official will not be used against this contract.

C.5.3.3. The Contractor shall furnish the COTR at each respective installation the results of each employee's, LAC and make employee personnel records available to the COTR, as required.  Those individuals deemed suitable for employment by the certifying official, will submit an SF85P to the installation security officer to process a National Agency Check (NAC).  With a favorable LAC completed and the NAC request is submitted to the installation, the contractor may employ an individual in the interim, pending receipt of NAC results and final adjudication.

C.5.3.4. Unless waived by the Installation Commander, a secret security clearance is required for the Chief of Guards, Captain of the Guards and/or Shift Supervisor(s).  The Contractor shall forward requests for security clearances to the supporting office of the Defense Security Service (DSS).  Once the request is submitted to DSS, the employee may work with an interim clearance until the final clearance is received.  The Installation Commander has the authority to allow the prospective employee to work at a full performance level  based upon receipt of a favorable LAC.

C.5.4.    Chief of Guards.  The Contractor shall provide a Chief of Guards for each Task Order and a Captain of Guards if the total FTE contracted for the Task Order is greater than 60.  These individuals shall be responsible for the overall management and coordination of the Task Order and shall act as the central point of contact with the Government.  These individuals shall have had administrative and supervisory experience in security or law enforcement administration and operations in the Armed Forces/ military security police or civilian security operations.  The Contractor shall submit the qualifications of the proposed Chief of Guards to the Contracting Officer Technical Representative for approval NLT 30 days after Task Order issuance. The nature and extent of this experience shall be such that the individual is familiar with and capable of effectively managing a complex security operation of the type described within this PWS.  Supervisory experience shall include civilian police force, military police force, or civilian security guard experience.  The Chief of Guards shall supervise all personnel required to perform the security guard services as stated in this PWS.  He/she shall at all times be responsible to the Contracting Officer for the operational functions and duties required in the performance of this contract.  In the absence of the Chief of Guards, either the Captain of Guards or the on-duty shift supervisor will act on all matters in his/her behalf.  Both the Chief and Captain of the Guards shall have a secret clearance unless waived by the Installation Commander. The employee may work with an interim clearance until the formal clearance is received.

C.5.5.    Shift Supervisor.  Each Task Order shall designate a shift supervisor for each shift in which Contractor personnel are assigned.  The shift supervisor shall be responsible to the Chief of Guards for the conduct, performance, appearance, training, and scheduling of all individuals employed and shall supervise all personnel required to perform the security guard services as stated in the PWS.  The shift supervisor shall, at all times, be responsible to the Contracting Officer for the operational functions and duties required in the performance of this contract.  Normally a secret clearance is not needed for this individual.  However, the shift supervisor shall have a secret clearance if required by the Installation Commander. The employee may work with an interim clearance until the formal clearance is received.

C.5.6.    Appearance. All contract employees shall adhere to the standards of personal appearance as specified in AR 670-10.

C.5.7.    Intoxicants. Contract security personnel will not consume alcoholic beverages within 8 hours prior to reporting for duty, or have residual effects of alcohol when reporting for duty.

DABJ01-03-D-0014
P00019
Page 39 of 61

C.5.8.    Criminal Actions. Contractor employees may be subject to prosecution for criminal actions as allowed by law in certain circumstances, which include:

C.5.8.1.    Falsification or unlawful concealment, removal, mutilation, or destruction of any official documents or records or concealment of material facts by willful omission from official documents or records.

C.5.8.2.    Unauthorized use of Government property, theft, vandalism, or immoral conduct.

C.5.8.3.    Unethical or improper use of official authority.

C.5.8.4.    Misuse of weapons.

C.5.8.5.    Security violations.

C.5.9.    Medical Requirements. All tentative employees for assignment to contract security guard duties shall be required to undergo a medical examination, to include a urinalysis drug test, at Contractor's expense, to determine the physical qualifications and the emotional and mental stability of such employees. This requirement also applies to personnel currently employed in such positions. Employees assigned to these positions shall be re-examined annually, at the Contractor's expense, to determine their continued physical and emotional suitability to perform the functional requirements of such positions. Pre-assignment and annual physical screening, to include a urinalysis drug test, shall include as a minimum the standards at AR 190-56.

C.5.10.    Physical Agility Test. All tentative employees for assignment to contract security guard duties shall demonstrate physical ability during a Pre-assignment entry-level physical agility test outlined in AR 190-56. In addition, the Contractor shall conduct annual re-certification IAW AR 190-56. Personnel that fail to meet either the pre-assignment or the re-certification requirements shall not be used on this contract until such time as the employee meets the requirements.

C.6.    **TRAINING AND EVALUATION**

C.6.1.    The Contractor shall:

C.6.1.1.    Instruct Contractor personnel on the purpose, standards, and procedures of the IRP, on medical examination and physical agility standards.

C.6.1.2.    Instruct each employee that assignment to a security guard position is subject to the standards and procedures of the IRP.

C.6.1.3.    Review available personnel records and those records obtained as the result of the employment security screening procedures for suitability determination. DA Form 5557-R (Individual Reliability Screening and Evaluation Record) shall be used to record screening and evaluation of contract security personnel.

C.6.1.4.    Ensure that employees assigned, or to be assigned, to a security guard position have the required medical examinations and evaluations. The results of the medical examination will be evaluated by a physician to determine physical and mental condition. However, the physician will not decide the suitability of an individual. The Government's Certifying Official IAW AR 190-56 shall make this decision.

C.6.1.5.    Determine, after screening personnel and medical records, whether the person is acceptable for assignment to or retention in the IRP. If acceptable, the Contractor shall interview the individual and cover the topics below.

DABJ01-03-D-0014
P00019
Page 40 of 61

C.6.1.5.1.     The behavioral traits and medical conditions that are disqualifying for assignment to or retention in the IRP.

C.6.1.5.2.     The importance of the assignment and the responsibility involved.

C.6.1.5.3.     Each person's obligation under the continuing observation and evaluation aspects of the IRP to report promptly any factors or conditions that may adversely affect his or her performance or that of fellow workers.

C.6.1.6.     Assign to security guard positions only those employees who are found by the certifying official to be eligible for the IRP.

C.6.1.7.     Promptly on notice of information that is, or appears to be, reason for disqualification, temporarily remove an employee from a security guard position.

C.6.1.8.     Immediately suspend an employee from a security guard position when the employee has been temporarily removed from the IRP.

C.6.1.9.     Replace any individual who is disqualified under the IRP.

C.6.1.10.     Make personnel files and records available to the Installation COTR to ensure compliance with provisions of the IRP.

C.6.2.     Training and Instruction.

C.6.2.1.     The Contractor shall furnish fully trained and qualified personnel to accomplish all work identified in the PWS.  The Contractor shall establish a training program for all persons performing security guard and supervisor duties and for ensuring that minimum proficiency requirements, as set forth in this statement of work, are met. The Contractor's Procedures Manual shall provide detailed implementing guidance on a standardized training program.  Each individual who performs security guard tasks or duties shall, prior to assignment, be trained and qualified IAW guidance in this section.    The Contractor shall document the training and qualifications of each individual.  Contractor training courses and individual certifications shall be available for the Contracting Officer's review.

C.6.2.2.  The training program at a minimum will consist of the following topics.  These requirements are required to be trained initially for all new contract security guard personnel and annually there after.

C6.2.2.1 Use of force

C6.2.2.2 Anti-Terrorism, Threats, Definition, and Identification

C6.2.2.3 Security Operations, Basic functions, Patrolling techniques  & Responsibilities

C6.2.2.4 Respond to Hostage, Initial actions prior to Military Police response

C6.2.2.5 Personnel identification procedures, package and vehicle search procedures, and contraband identification/seizure procedures IAW local SOP.

C6.2.2.6 Firearm qualification and safety, M 9 pistol / shotgun.  Weapons familiarization/qualification shall be completed in accordance with the Military Police Firearms Qualification (MPFQC) prescribed by Para 2-5b(1), AR 190-14.

DABJ01-03-D-0014
P00019
Page 41 of 61

C6.2.2.7 Unarmed self defense

C6.2.2.8 OC Spray, Techniques, Use, & application

C6.2.2.9 Night stick/police baton use and techniques

C6.2.2.10 Protect a crime scene, respond, clear and secure crime scene for Military Police

C6.2.2.11 Use of Interpersonal skills (IPC), Verbal skills, de-escalation, non-verbal actions

C6.2.2.12 Searches, 4th Amendment Rights, Consent, & Seizure, Techniques

C6.2.2.13 Handcuffs application

C6.2.2.14 Hand and arm Signals, basic traffic control techniques

C6.2.2.15 Record police information using a DA Form 2823, Sworn Statement

C6.2.2.16 Contract Security Guard authority and jurisdiction

C6.2.2.17 Prevention of Sexual Harassment

C6.2.2.18 Contract Security Guard Customer Service

C6.2.2.19 Military Customs and Courtesies

C.6.2.3.    The Contractor shall train his employees with the specific Installation Administrative Standard Operating Procedures (SOP) to which they are assigned.

C.6.2.4.    Continuing evaluation of IRP personnel is essential.  IRP personnel, supervisors, associates, or medical personnel will report any incident or problem that might be cause for temporary or permanent removal from IRP duty promptly to the Contractor.  Any prescribed use of medication that may detract from the ability of a person to perform assigned duties must also be reported.

C.6.2.5.    When performance of duty may be impaired by the use of prescribed medication or short-term stress, the person shall be immediately restricted from contract security guard duties.

C.6.2.6.  The Contractor shall provide a monthly training schedule depicting all scheduled training to the Contracting Officer Technical Representative.

C.6.3.    Installation Specific Orientation/Training Requirements.  Installation specific training will be initially conducted by the Government, in the following areas.   The Contractor will conduct all follow-on training.

C.6.3.1. Installation Orientation

C.6.3.2.  Installation organization and chain of command.

C.6.3.3.  Location of key areas/facilities.

C.6.3.4.  Jurisdiction and authority

DABJ01-03-D-0014
P00019
Page 42 of 61

C.6.3.5.  Unique/Special Safety Procedures

C.6.3.6.  Rules for the use of force

C.6.3.7.  Respond to alarms/bomb threats

C.6.3.8.  Gather, report, and record police information

C.6.3.9.  Control entrance/exit at a controlled area

C.6.3.10.    Installation unique search and seizure techniques (when and what to be searched)

C.6.3.11.    Other installation unique orientation/training requirements

## C.7.    GENERAL ADMINISTRATIVE REQUIREMENTS

C.7.1.    The Contractor is responsible for reviewing and updating current plans and procedures throughout the life of this contract.  Any revisions shall be provided to the Contracting Officer for approval. Any changes made during the Contract performance period shall be submitted and approved by the Contracting Officer prior to implementation

C.7.2.    Transition Plan.  A Transition Plan to incorporate a Transition Period will be established per task order.  The Transition Period/Plan will include any site unique Government required training.

C.7.3.    Contingency Plan.  The Government establishes contingency plans and contingency training missions to support mobilization, or a national emergency, or to augment local government in the event of national or threats/attacks on government.  The Contractor shall have a clear and concise Contingency Plan with each Task Order to meet any emergency demands such as increased Contractor-furnished property (vehicles), extended work hours and/or expansion of the Contractor workforce due to any of the following events:

C.7.3.1.  A sudden buildup of military forces in preparation for war, police action, international crises, increase FPCON, etc.

C.7.3.2.  A natural disaster which impacts upon either the government's or Contractor's ability to perform.

C.7.3.3.  Civil disturbances (i.e., riots, mass demonstrations, terrorist attacks, etc.).

C.7.3.4.  Labor strikes, which impact upon either the, governments or Contractor's ability to perform.

C.7.3.5.  Local government emergencies such as accidents, fires, terrorist attacks, etc.  In all cases the Contractor shall assume that the Army cannot provide any supplemental support to the Contractor and will continue to need the same level of support under the contract.

C.7.3.6.  The contractor will initiate any portion of the contingency plan to increase services or equipments upon the request of the installation so as to provide a timely response to the emergency situation.  The installation must identify the source of funding necessary to cover the cost of any implementation of the contingency plan and forward a MPR to the contracting officer within 72 hours of the incurred cost.  Some examples of resources the contractor may commit to increase manpower requirements are to hold shifts on duty, increase to 12-hour shifts, cancel scheduled off-days, temporarily assign personnel from other sources, and/or hire new personnel for prolonged periods of increased services.

DABJ01-03-D-0014
P00019
Page 43 of 61

C.3.7. The Contingency Plan shall designate a single point of contact within the Contractor's organization for coordination of contingency and mobilization planning activities.

C.7.4.    Quality Control.

C.7.4.1.  Quality control is the responsibility of the Contractor.  The Contractor shall establish and implement a system of supervisory checks and controls to ensure that the minimum requirements and standards outlined in the Task Order PWS are met.

C.7.4.2.  The Contractor shall submit a copy of this quality control plan to the installation COTR within 30 days after contract award. Any supplements required for individual Task Orders shall be submitted within 30 days of the Task Order award.  Any changes to the Task Order made during the Contract performance period shall be submitted and approved by the Contracting Officer prior to implementation.

C.7.5.    Safety.  The Contractor shall establish and maintain an accident prevention program.  The safety program will conform to requirements of applicable Army Regulations AR385-10 and to the Occupational Safety and Health Act of 1970 (OSHA).  Procedures for Federal and State "Occupational Safety and Health Inspections and Investigations" at contractor work places on DOD installations are outlined in DODI 1000.18 at Appendix E.

C.7.6.    Energy Conservation.  The Contractor shall instruct employees in appropriate utilities conservation practices.  Contractor's employees, and in turn the Contractor, shall operate under conditions which preclude the waste of utilities.

C.7.7.    Physical Security/Key control.  The Contractor will provide security and key control for Government-owned/provided facilities, sentry stations, administrative areas and equipment AR 190-51, AR 190-11 and AR 190-13.

C.7.8. Procedures Manual.

C.7.8.1. The Contractor shall develop a Procedures Manual that supplements existing guard related procedures/SOP's related to this effort.  The Government will provide, within 15 days after task order award, procedures/SOP's to the contractor installation/unique procedures/SOP's.

## C.8.    SPECIFIC TASKS

C.8.1.    The Government shall provide a daily situational briefing at each installation identifying unique conditions that may affect normal daily operations.

C.8.2.    Licenses/Certifications.  Due to exclusive and concurrent federal jurisdiction of military installations, there is no requirement for the contractor to obtain state or local individual security guard licenses/certifications.  Any deviation from this policy will be reflected in the individual Task Order Requests and executed Task Order.

C.8.2.1.  The Contractor shall obtain any and all federal licenses required for the purpose of fulfilling the requirements of this contract and Task Order(s).

C.8.2.2.  If required by the terms of an individual Task Order, the Contractor shall obtain any and all state/local licenses/certifications required for the purpose of fulfilling the requirements of the individual Task Order(s).

C.8.3.    The Contractor shall ensure that all of his employees comply with and abide by all regulations, directives, manuals, and circulars indicated in Section C.9.

DABJ01-03-D-0014
P00019
Page 44 of 61

C.8.4.   The Shift Supervisor shall implement existing regulations and otherwise carry out routine procedures, and operations of the guard unit. They shall immediately report all violations of security procedures to the designated Installation POC. All shift supervisors and assistant shift supervisors shall have an automobile, not Government furnished, and radio at their disposal and be armed.

C.8.5.   The Contractor shall submit to the designated Military Shift Supervisor immediately, a full report of all incidents, which pose any actual or potential threat to the facility's security, or safety of the personnel located there. If there is any doubt as to whether a report should be filed, that doubt should be resolved in favor of reporting the incident or condition. Government owned facilities or equipment found to be in need of repair shall be reported within 1 hour of discovery to the designated Military Shift Supervisor. Report all violations of security procedures discovered by guards immediately to the Military Police Desk.

C.8.6.   Detect and detain, by use of necessary force, trespassers, or unauthorized persons who gain or attempt to gain access to the installation or restricted areas by illegal or unauthorized means. Detect and detain persons suspected of committing other offenses such as drunk driving, improper transport of weapons, etc. and IAW local SOP's and/or special orders.

C.8.7.   In emergencies, such as fires or accidents, or in the event of unusual occurrences adversely affecting Governmental interest, or public safety, the Military Police Shift Supervisor may redirect all posts and cause the Contractor to summon appropriate assistance and/or render such aid as may be necessary or logical under the circumstances without prior approval of the COTR, COR or Contracting Officer. This may include (not identified as required training), assisting with control of traffic and personnel, engaging in fire fighting duties, protecting evidence at the scene of a crime, or guarding an area following a natural disaster or serious incident.

C.8.8.   Stationary Security Force. The Stationary Security Force shall:

   C.8.8.1.   Provide ingress/egress control at the station of assignment, and conduct personnel, package, and /or vehicle searches IAW local SOPs

   C.8.8.2.   Maintain  radio contact with the installation security/MP command and control radio net.

   C.8.8.3.   Maintain a log of all vehicles and personnel entering and leaving the guard station, as required by the specific Installation SOP.

   C.8.8.4.   Immediately report illegal acts/ incidents, any attempts of unauthorized entry and all suspicious or unusual activity IAW with local SOP.

C.8.9.   Patrol Security Force. The Contractor shall provide a vehicular-mounted roving security patrol force to perform security checks of installation facilities. The Patrol Security Force shall:

   C.8.9.1.   Provide roving patrols to perform security checks of those facilities identified by the Task Order.

   C.8.9.2.   Promptly report  IAW local SOP, any building found to be unsecured and/or other observations that appear to be out of the usual.

   C.8.9.3.   Maintain radio communications.

   C.8.9.4.   Physically check all facilities to ensure that all accessible doors/windows at ground level and others that are readily accessible are shut and locked.

DABJ01-03-D-0014
P00019
Page 45 of 61

C.8.9.5.  Maintain a record of all facilities-checked, patrol activity, and other guard activities performed.

C.8.9.6.  Advise security desk whenever any unauthorized or suspicious personnel or activity is observed and request assistance if necessary.

C.8.9.7.  Notify the military police and/or fire department in the event of an emergency situation.

C.8.9.8.  Comply with Special Guard Post Requirements.

C.8.10.  Contractor shall provide personnel and equipment to perform duties for each guard post as indicated in the Task Order.  At no time shall a post be left unattended unless directed by authorized Government personnel.  Contractor shall ensure each employee is thoroughly familiar with general and special guard orders before being posted.

C.8.11.  Access to Facilities.

C.8.11.1.  Representatives of the Government and/or Governmental Contractors may be authorized access to Government-furnished facilities.  The contractor will comply with each specific Installation SOP/Policy.

C.8.12.  Security of Classified Items and Information.  Contractor shall guard and protect all Government classified information, documents, materials, models, etc., coming into the possession of the Contractor, with personnel having the appropriate security clearance, from all unauthorized access, loss, or theft.

C.8.13.  Authority and Use of Force.

C.8.13.1.  The authority of civilian contract security guards is prescribed in AR 190-56.  While contract civilian security guards shall not be delegated command authority to perform law enforcement functions, there is necessarily a very limited overlap in the activities performed by the security guard and law enforcement personnel.  For example, a contract security guard, if necessary to protect property, may detain persons and turn them over to the law enforcement authorities.

C.8.13.2.  Contractor employees serving as supervisors and security guards under this contract shall bear and may use firearms while performing security guard duties on the installation.  Use of force shall not exceed that as outlined in AR 190-14.

C.8.14.  Contractor shall require all employees to cooperate to the fullest extent possible when called upon to testify or submit a statement in a court-martial proceeding before a commissioner's court or in any other legal proceeding.

C.8.15.  Contingencies.  The Contractor shall provide additional resources, in accordance with the approved Contingency Plan, when directed to do so by the Contracting Officer.

C.8.16.  Lost and Found Property.  The Contractor shall ensure that all articles found by Contractor's employees are turned in to the designated location within one (1) workday.

## C.9.    APPLICABLE REGULATIONS AND MANUALS

C.9.1.    Documents applicable to the PWS are listed below.  The Government at contract start will make Army publications available.  DOD Directive Manuals and Field Manuals listed below will be

DABJ01-03-D-0014
P00019
Page 46 of 61

available for review prior to proposal due date and throughout the contract performance period at the designated Installation location.

| DIRECTIVE | | | | |
|---|---|---|---|---|
| | TITLE | DATE | | |
| DoD MANUAL | | | | |
| 5100.76-M | Physical Security of Sensitive Conventional Arms, Ammunitions & Explosives | 3 Feb 83 | | |
| 2220.22-M | Industrial Security Safeguarding Classified Information | Mar 89 | | |
| 5220.22-R | Industrial Security Regulation | Dec 85 | | |
| | | | | |
| FIELD MANUALS | | | | |
| 19-10 | Military Police Law and Order Operations | Sep 87 | | |
| 3-19.30 | Physical Security | Jan 01 | | |
| | | | | |
| U.S. Army Regulations | | | | |
| 40-5 | Preventive Medicine | 15 Oct 90 | | |
| 25-2 | Information Assurance | 14 Nov03 | | |
| 190-11 | Physical Security of Weapons, Ammunitions & Explosives | 12 FEB 98 | | |
| 190-13 | The Army Physical Security Program | 30 Sep 93 | | |
| 190-14 | Carrying of Firearms & Use of Force for Law Enforcement and Security Duties | 12 Mar 93 | | |
| 525-13 | Antiterrorism | 4 Jan 02 | | |
| 190-51 | Security of Unclassified Army Property (Sensitive and Non-Sensitive) | 30 Sep 93 | | |
| 190-56 | The Army Civilian Police and Security Guard Program | DRAFT | | |
| 385-40 | Accident Reporting and Records | 1 Nov 94 | | |
| 530-1 | Operations Security | 3 Mar 95 | | |
| 600-85 | Army Substance Abuse Program | 21 Oct 88 | | |

C.9.2.    Copies of applicable US ARMY regulations may be requested and/or reviewed at the designated Installation.

C.9.3.    The Contractor is responsible for employees' adherence to Post Regulations.

C.10   Installation Commander's (IC) Authority and Jurisdiction. DoD Directive 5200.8, 25 Apr 91, Security of DoD Installations and Resources, and Section 797 of Title 50, United States Code, Section 21 of the Internal Security Act of 1950, requires DoD installation commanders to take reasonably necessary and lawful measures to maintain law and order and protect installation personnel and property.  Based on this authority, the Installation Commander has the authority, under this Army contract, to direct security activities on his/her installation. Each individual guard's authority to perform the required duties (e.g., search, detain, protect human/property assets, use appropriate levels of force) only exists and is limited to that specifically authorized by the Installation Commander. The limits of authority, jurisdiction and/or use of force for contract guards should be prescribed in writing by the Installation Commander.  The Installation Commander is personally and directly responsible for the authority granted to each guard at every instant of time. Accordingly, the Installation Commander must have full operational control, within the scope of the contract, for all contract guards.  The Installation Commander, consistent with AR 190-14 and local law, will establish use of deadly force criteria for contract security forces." The Installation Commander has command and control authority, as exercised through the COTR and the Contractor's Chief of Guards, regarding the issuance of use of force and work schedule not to exceed the authorized full time equivalent of the installation work order.  Except in emergency situations, the Contracting Officer Representative and/or Contracting Officer will be advised of

DABJ01-03-D-0014
P00019
Page 47 of 61

anticipated changes to the performance work statement and/or work schedules, which may incur additional costs, at least five working days prior to the desired implementation.

(END OF SECTION C - PERFORMANCE WORK STATEMENT)