UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

GWENDOLYN GRAY,

               Plaintiff,            08 Civ. 3233

   -against-                    OPINION

WACKENHUT SERVICES, INCORPORATED,
ALUTIIQ SECURITY & TECHNOLOGY, LLC
And AFOGNAK NATIVE CORPORATION,

               Defendants.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6 25 10

A P P E A R A N C E S:

           Attorneys for Plaintiff

           FINKELSTEIN & PARTNERS, LLP
           1279 Route 300, P.O. Box 1111
           Newburgh, NY 12551
           By:  George A. Kohl, Esq.

           Attorneys for Defendant
           Wackenhut Services, Incorporated

           AHMUTY, DEMERS & McMANUS, ESQS.
           200 I.U. Willets Road
           Albertson, New York  11507
           By:  Frank J. Pecorelli, Jr., Esq.

           Attorneys for Defendants
           Alutiiq Security and Technology, LLC
           and Afognak Native Corporation

           LESTER SCHWAB KATZ & DWYER, LLP
           120 Broadway
           New York, NY  10271
           By:  John Sandercock, Esq.

**Sweet, D.J.**

The defendants Wackenhut Services, Incorporated ("Wackenhut"), Alutiiq Security and Technology, LLC ("Alutiiq") and Afognak Native Corporation ("Afognak") (collectively, the "Defendants") have moved under Rule 56(b), Fed. R. Civ. P., to dismiss the complaint of Gwendolyn Gray ("Gray" or the "Plaintiff") seeking damages for personal injury she suffered when the car she was driving struck the steel plate barrier which barred access to the United States Military Academy at West Point ("West Point"). Upon the findings and conclusions set forth below, the motion is granted, and the complaint dismissed.

## Prior Proceedings

On April 1, 2008, Gray filed her complaint against the United States and the Defendants arising out of the accident which occurred at West Point on May 18, 2005.

The United States moved to dismiss the complaint and by stipulation and order of October 2, 2008, the United States was dismissed as a defendant.

1

The instant motion was heard and marked fully
submitted on January 20, 2010.

**The Facts**

The facts have been set forth in the Defendants'
Statements pursuant to Local Rule 56.1 and the Plaintiff's
Response and Addendum. The facts are not in dispute except
as set forth below.

**A. Procedures for Operating the Barrier**

In 2005, at the United States Military Academy at
West Point, hydraulically operated barriers limited
vehicular access to certain portions of the post (Bishop
tr. 9-11). The barriers consisted of steel plates that,
when in the up position, blocked the roadway and prevented
vehicles from proceeding forward.

The barrier was operated by security guards
employed by Alutiiq/Wackenhut, a joint venture retained by
the Department of the Army to provide security services at
West Point. The joint venture was 51% controlled by Alutiiq
and 49% controlled by Wackenhut. Individual security guards

2

were employed by either Alutiiq or Wackenhut, and not by
the joint venture (Berrios tr. 34).

A valid ID and a special vehicle pass were
required to pass through the gate (Bishop tr. 12; Gray tr.
68-69).

After a vehicle stopped at the barrier, the
security guard on duty would check the identification of
the occupants of the vehicle (Gray tr. 68; Maldonado tr.
26-27).

The guard in the guard shack would lower the
steel barrier to allow the vehicle to pass.  According to
Gray, the guard would generally tell the driver of the
vehicle to proceed and wave his hand to indicate one could
proceed. (Stewart, tr. 12; Gray tr. 84-85; Maldonado tr.
26-27);

In 2005, in order to get into the section of the
post where her office was located, Gray had to pass through
the Arvin Gym Gate (Gray tr. 56-57). She passed through
that gate daily and was familiar with the procedures in

3

place (Gray tr. 67-70). The barrier was always up when she approached it (Gray tr. 83).

The barrier at the Arvin Gym was sometimes operated by one guard (Bishop tr. 15; Maldonado tr. 26-27). If one of the guards was on a meal break or a bathroom break, the remaining guard would check the IDs and lower the barrier (Maldonado tr. 29-30). The guard would check the IDs from the driver's side, let the driver know that the ID was good, walk around the back of the vehicle until he reached the guard shack, enter the guard shack and hold the button to lower the steel barrier (Bishop tr. 17; Maldonado tr. 32). According to Gray, one of the guards testified that he would go around the front of the shack (Bishop tr. 21).

Lowering the barrier took less than 30 seconds (Maldonado tr. 32; Bishop tr. 20). The barrier made a mechanical noise as it was being lowered (Bishop tr. 68; Maldonado tr. 32-33). The steel plate made a crashing metallic sound, a "slap", or a "slam" when it reached the ground (Stewart tr. 16; Bishop tr. 17; Maldonado tr. 32). According to Gray the barrier made a "grinding type noise"

4

which stopped when the barrier was up or down (Gray tr. 88, 90).

The security guards received their gate training from the military police (Bishop tr. 9; Maldonado tr. 9-10, 24; Award/Contract at ¶ C.6.3). Employees of the United States government were responsible for the maintenance and repair of the barrier system, including the traffic lights (Maldonado tr. 24-25 , 58; Award/Contract at ¶ C.3.4).

### B. **The Events on the Day in Question**

On May 18, 2005, Gray was employed as a supply technician at the United States Military Academy at West Point, NY (Gray tr. 11).

Pedro Maldonado ("Maldonado"), an Alutiiq employee, and Roland Bishop ("Bishop"), a Wackenhut employee, were operating the checkpoint on May 18, 2005 (Bishop tr. 6; Maldonado tr. 37, 62-63). According to Defendants, Maldonado was the only security officer working the gate when Gray's vehicle approached the barrier (Gray tr. 85-86). Bishop was either in the guard shack (Gray tr. 86, 89-90) or taking a restroom break (Maldonado tr. 50). According to Gray, both were operating the checkpoint when

5

she approached.    (Gray tr. 86-87, 89, 100; Stewart tr. 15-27, 29, 34).

Gray approached the gate in her automobile, a 1999 Lincoln Continental, with a passenger, co-worker Pamela Brown (now Pamela Stewart), around 8:00 a.m. (Stewart tr. 20; Gray tr. 17-19).

Gray stopped her vehicle about five feet in front of the barrier (Maldonado tr. 45), which was in the up position. The barrier was visible from the front seat of the car (Stewart tr. 27; Gray tr. 85).

According to Defendants, Maldonado checked the identification cards presented by Gray and Brown from the driver's side of the vehicle and told them that their IDs were good (Maldonado tr. 51, 60). According to Gray, Maldonado said "okay, Gwen you can go." Bishop yelled from the guard house "They can go." The signal lights were not working. (Gray tr. 80, 91, 92, Stewart tr. 24, 34).

Maldonado testified that he walked around the rear of the vehicle toward the guard shack to lower the barrier (Maldonado tr. 51). According to Gray, Maldonado

6

was still standing next to the driver's side window when
Gray took her foot off the brake and put it on the gas to
proceed (Gray tr. 96). Bishop was in the guard shack, and
must have been the guard that lowered the barrier, because
Maldonado was near the Plaintiff's car, while the barrier
was being lowered (Gray tr. 86, 87, 89, 96, 100; Stewart
tr. 29, 34).

When Gray stepped on the gas, she simultaneously
heard the guard yell "stop" as the front of her vehicle
came into contact with the metal barrier (Gray tr. 96-97).

Maldonado had reached the passenger side rear
fender of the vehicle when it lurched forward and struck
the barrier (Gray tr. 96; Maldonado tr. 51-52). According
to Maldonado, he was not in the guard shack when the
vehicle struck the barrier, and had not started to lower
the barrier (Maldonado tr. 51-52, 60). Gray has denied
that Maldonado was standing by the passenger side rear
fender of her vehicle when it struck the barrier (Gray tr.
96), but she admitted that Maldonado was not in or near the
guard shack when her vehicle struck the barrier and that
Maldonado had not started to lower the barrier. She has
denied that the barrier was not in the process of being

7

lowered at the time her vehicle struck it (Gray tr. 26, 93,
94; Stewart tr. 29, 32, 33, 36) Stewart testified that she
heard the mechanical sound ordinarily made by the barrier
when it was going down, when the Plaintiff was told that
she was "good to go" or "okay to go" (Stewart tr. 31, 32,
33).

Bishop did not witness the accident, but heard a
"crunch" and did not hear the hydraulic machinery in
operation before the crunch (Bishop tr. 72-73). Gray has
denied that the hydraulic machinery was not in operation
when Gray struck the barrier. (Gray tr. 26, 93, 94).
Stewart heard the noise of the barrier after Gray was told
to go through and saw the barrier going down (Stewart tr.
3-33). According to Stewart, Gray's passenger, she did not
hear the noise of the gate after the guard told Gray to go
(Stewart tr. 31, 32).

The barrier continued to function normally
following the accident and was used for the remainder of
the day (Bishop tr. 35, Maldonado tr. 57-58, 59).

8

## There Is Jurisdiction

Gray initially filed suit against the United States Government, along with the remaining named Defendants, pursuant to 28 U.S.C. § 1346(b). Supplemental jurisdiction over these defendants is appropriate even after the dismissal of the claims brought against the United States, pursuant to 28 U.S.C. § 1367(a), et seq. Moreover, jurisdiction exists over this matter pursuant to 28 U.S.C. 1332(a), as there is complete diversity of citizenship between all parties, and the minimum amount in controversy has been pleaded.

## The Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inference in its favor, and may grant summary judgment only when no reasonable trier of

9

fact could find in favor of the nonmoving party." Allen v.
Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations
and quotation marks omitted); see also Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
Once a defendant has carried his burden under Rule 56(c),
the plaintiff "may not rely merely on allegations or
denials in [his] own pleading," but must, "by affidavits or
as otherwise provided in this rule[,] set out specific
facts showing a genuine issue for trial." Fed. R. Civ. P.
56(e)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986); Twin Lab, Inc. v. Weider Health & Fitness, 900 F.2d
566, 568 (2d Cir. 1990). In doing so, a plaintiff "must
produce specific facts indicating that a genuine factual
issue exists. If the evidence presented by the non-moving
party is merely colorable, or is not significantly
probative, summary judgment may be granted." Scotto v.
Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (internal
quotation marks and citations omitted).

## No Duty On The Part Of Wackenhut Has Been Established

To establish a prima facie case of negligence, a
plaintiff must demonstrate the existence of a duty, a
breach of that duty, and that the breach of such duty was

10

the proximate cause of his or her injuries. Gordon v.
Muchnick, 579 N.Y.S.2d 745, 745 (App. Div. 1992). The
defendant must owe a duty of reasonable care to the
particular plaintiff. Absent a duty of care, there can be
no breach thereof and no liability. Palsgraf v. Long
Island R. Co., 248 N.Y. 339, 341 (1928); Gordon, 579
N.Y.S.2d at 745.

Where the facts concerning the relationship
between the parties and the circumstances surrounding the
occurrence are in accord, the determination of whether a
duty exists is a matter of law. Id.. C.f., Pulka v.
Edelman, 40 N.Y.2d 781, 782 (1976). Without a present duty
of care, responsibility for harm does not shift from one
party to another for the effects of unintended harm does
not occur. See Strauss v. Belle Realty Co., 65 N.Y.2d 399,
401 (1985). The determination of whether a duty exists is
a careful inquiry whereby common sense, science and policy
play an important role in determining whether to impute
liability for the damage suffered by one onto another.
Waters v. N.Y.C. Housing Authority, 69 N.Y.2d 225, 229
(1987). As such, the determination of whether a duty
exists is an inquiry for the Court and not the fact finder.
Id. While this determination is best left to the Court,

11

there is no precise formula that may be used to determine
the existence of a duty of care. See Pulka, 40 N.Y.2d 781
at 782-83.  However, when sifting through the significant
socioeconomic facts intertwined with the determination of
'to whom an individual may owe a duty of care,' the Court
is provided with substantial guidance by way of well
settled principles of decisional law. See id.

Alutiiq was contracted directly by the U.S. Army
to provide security services at West Point.  Wackenhut was
subcontracted to assist in delivering these services.
Alutiiq, and by extension, Wackenhut owned a contractual
duty to the Government.  The parameters of the contractual
duties owed by the Defendants to the U.S. Army are well
defined in the Alutiiq-U.S. Army Contract and the Alutiiq-
Wackenhut Subcontract.  This duty of care does not
naturally extend to the Plaintiff.

Here, the Alutiiq employees met the Plaintiff,
checked her credentials and waived her through the
barricade.  Under the subcontract between Alutiiq and
Wackenhut, Wackenhut, as the subcontractor, had no duty,
nor did it have any authority to control the means and
methods in which Alutiiq carried out its work in allowing

12

the Plaintiff to pass through the barricade. As a general
rule, negligence will not attach in such circumstances,
where the first entity had no direct ability to control or
direct the method in which the second entity performs its
work. Kleeman v. Rheingold, 81 N.Y.2d 270, 273-74 (1993).
There is no evidence of negligent performance by Wackenhut
absent the acts of Alutiiq.

Cases have developed with respect to the common
law negligence and New York Labor Law § 200 in construction
accidents. In order for a duty of care to exist, the
defendant must have had the ability to substantially direct
or control the means and methods by which work is
performed. Id. at 274. Where the defendant does not have
the ability to exert control over the performance of the
specific work, a cause of action sounding in negligence
cannot be maintained. Cun-En Lin v. Holy Family Monuments,
796 N.Y.S.2d 684, 687 (App. Div. 2005). As Wackenhut had
no authority to supervise, control or direct the means and
methods employed by Alutiiq in allowing the Plaintiff to
pass through the barricade and gain access to West Point,
negligence cannot attach as to Wackenhut, as it owed no
duty to the Plaintiff to step beyond its contractual role

13

as a subcontractor to Allutiiq and overtake a supervisory
capacity.

In the present case, to establish that Wackenhut
owed the Plaintiff a duty of care it would be necessary to
infer that Wackenhut was required to step outside the
boundaries of its subcontract and begin supervising the
prime contractor, Alutiiq.  Here, Wackenhut was not
contracted to control the means and methods employed by
Alutiiq in waiving the Plaintiff through the barricade.
Wackenhut will not be held liable for failing to do more
than its subcontract required.  Kleeman, 81 N.Y.2d 270 at
273.

In Rodriguez v. Presbyterian Hosp., 688 N.Y.S.2d
120 (App. Div. 1999), the Appellate Division was faced with
determining whether a subcontractor could be held liable
for failing to go beyond its contract to detect and warn of
other latent hazards or defective conditions.  The Court
held that a subcontractor cannot be held liable for failing
to go beyond the limits of its contract, even if a
resulting, foreseeable-harm befell the Plaintiff.  Id. at
122.

14

Similarly in Swade v. Nassau Valve & Supply
Corp., 734 N.Y.S.2d 85, 86 (App. Div. 2001), the Appellate
Division declined to extend liability to a defendant for
its employee's failure to go beyond the realm of her duties
and assist the plaintiff, truck driver, in loading his
truck. Id. at 85-86. See also Lippman v. Island Helicopter
Corp., 670 N.Y.S.2d 529, 529-30 (App. Div. 1988), H.R. Moch
Co. v. Rensselaer Water Co., 247 N.Y. 160, 167-68 (1927).
A defendant cannot be held liable for failing to do more
than what he was required to do. Under these authorities,
Wackenhut did not owe the Plaintiff a duty of care.

## The Negligence Of Alutiiq Has Not Been Established

Alutiiq did not contract to protect the Plaintiff
as she entered West Point. The Defendants contracted with
the U.S. Army to provide security services and guard the
Academy. The Defendants had no duty under either contract
to maintain the barrier, nor did the Defendants owe an
independent duty to a motorist (like the Plaintiff),
attempting to gain entry to West Point, as that motorist is
not an intended third party beneficiary of the contract for
services. Espinal v. Melville Snow Contractors, 98 N.Y.2d
136, 139-40 (2002); Rudel v. National Jewelry Exchange

15

Company, 623 N.Y.S.2d 878 (App. Div. 1995). As the court

stated in Rudel v. National Jewelry Exchange Company, 623

N.Y.S.2d 878 (App. Div. 1995):

> Liability may not be imposed on the defendant
> security guard company. Plaintiffs are not
> third-party beneficiaries of the contract between
> the defendant managing agent and the defendant's
> security guard company. The defendant's security
> guard company did not assume a special duty of
> care to plaintiffs and the imposition of
> liability against it would contravene sound
> public policy governing the orbit of duty owed to
> non-contracting parties."

Id. at 878-79. As Gray was not a third-party

beneficiary of the contracts between the Defendants

and the U.S. Army, liability may not attach.


**Gray Is Barred By Contributory Negligence**


Moreover, even if it assumed that Alutiiq owed a

duty of care and that its employee was negligent in waiving

Gray through with the barrier still up (a disputed fact),

the negligence of Gray bars her recovery. Although Gray

has claimed that the barrier was not visible, the

undisputed damage to the Plaintiff's vehicle was

centralized at the top portion of the grill of the engine

16

compartment.  (See Def. Exs. E, F, and J, annexed as
Appendix A).

Maldonado testified that he did not reach the
control to lower the barrier before the Plaintiff drove
into it, and Bishop testified that he did not hear the
machinery of barrier operating before hearing the sound
made by Plaintiff's car as it struck the barrier (Maldonado
tr. 51-52, 60; Bishop tr. 72-73).

There is no competent evidence that the guards
departed from the protocol they were instructed to follow
or other relevant industry standards. Michelle K. v.
Stonehurst 111 Associates, 854 N.Y.S.2d 753, 754 (App. Div.
2008) (experts' affidavits submitted by the plaintiffs were
insufficient to raise a triable issue of fact as to whether
the defendants failed to take minimal security precautions
because the experts did not refer to relevant industry
standards). Moreover, this allegation does not state a
claim against Alutiiq and Wackenhut for negligent training
because the guards received their training in the operation
of the barrier from the military police, not their
employers. (Bishop tr. 9; Maldonado tr. 9-10, 24;
Award/Contract at ¶ C.6.3).

17

In addition, "[a] driver is required to see that which through proper use of his or her senses he or she should have seen", Rahaman v. Abodeledhman, 883 N.Y.S.2d 259, 261 (App. Div. 2009), and the Plaintiff's failure to see the security barrier over the hood of her car is negligence.  See Bolta v. Lohan, 661 N.Y.S.2d 286, 286 (App. Div. 1997).

The damage to the top of the grill of Gray's car establishes that the barrier had to be visible over the hood of her car since it was, if in movement at all (a disputed fact) going from a raised position to a horizontal position.  The incontrovertible documentary evidence and the agreed sequence of events overcomes Gray's assertion that she could not see the barrier.  Not every purported dispute of fact will defeat summary judgment.  Woodford v. Community Action of Greene County, Inc.  268 F.3d 51, 54 (2d Cir. 2001) ("A factual dispute does not present a genuine issue precluding summary judgment unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") (internal quotation marks omitted).

18

Gray moved her vehicle without ascertaining that
the barrier had been lowered and was negligent as a matter
of law because her conduct violated Section 1162 of the
Vehicle and Traffic Law which provides:

> No person shall move a vehicle which is stopped,
> standing, or parked unless and until such
> movement can be made with reasonable safety.

N.Y. Veh. & Traf. Law § 1162.  See also Duncalf v.
Swamsington, 2007 WL 2387968, 3 (S.D.N.Y.,2007)("[I]t is
settled that a driver is negligent where an accident occurs
because [he] has failed to see that which through proper
use of [his] senses [he] should have seen," citing Bolta v.
Lohan, 661 N.Y.S.2d at 287.

A violation of N.Y. Veh. & Traf. Law § 1162
constitutes negligence as a matter of law. Elliott v. City
of New York, 95 N.Y.2d 730, 734 (2001)(violation of a State
statute that imposes a specific duty constitutes negligence
per se); Jones v. Radeker, 820 N.Y.S.2d 321, 322 (App. Div.
2006)(holding that plaintiff's entrance into the
intersection in violation of Vehicle and Traffic Law §
1111(d)(2)(a) constituted negligence per se).

19

In Irwin v. Mucha, 545 N.Y.S.2d 863 (App. Div.
1989), the defendant pulled his car forward and ran over
the plaintiff's foot just after the plaintiff had alighted
from the car and before she had closed the left rear door.
The court held that the defendant's violation of VTL § 1162
was sufficient evidence of negligence to establish the
plaintiff's prima facie entitlement to judgment on a motion
for summary judgment, and that the defendant had failed to
raise an issue of fact in opposition to the motion. Id. at
864.   See also Driver's Negligence Proximate Cause of
Decedent's Injuries; Partial Summary Judgment Granted
(Mirabile v. Malanga), N.Y.L.J., June 9, 2009, at 27
(granting plaintiff summary judgment on liability because
the evidence showed that defendant moved the vehicle from a
stopped position with the car door open and without
ensuring that the movement could be made with reasonable
safety).

In Stevens v. Zukowski, 865 N.Y.S.2d 435 (App.
Div. 2008), a vehicle driven by the defendant suddenly
pulled out in front of the motorcycle driven by the
plaintiff, causing plaintiff to strike defendant's vehicle
because he had no time to take evasive action. Plaintiff
moved for partial summary judgment on the issue of

liability, seeking the dismissal of "any affirmative
defenses of contributory negligence." Id. at 436. The
Appellate Division held that the plaintiff's motion should
have been granted because he had established that the
defendant's negligence was the sole proximate cause of the
accident, and the plaintiff had failed to raise an issue of
fact in opposition. Id.

The New York Vehicle and Traffic Law applies to
roadways on military reservations within the State of New
York. See generally United States v. Holmes, 1998 WL 99364
(N.D.N.Y. 1998)(prosecution for various VTL violations at
Fort Drum). State laws prohibiting driving while
intoxicated, unsafe starting, and unsafe backing apply on
private roadways as well as public streets. People v.
Murphy, 649 N.Y.S.2d 962, 963-64(App. Term 1996)(holding
that DWI laws apply in a municipal parking lot even in the
absence of a local law adopting the state law).

New York courts have granted summary judgment to
defendants in similar cases in which it was apparent that
the plaintiff's negligence was the sole proximate cause of
the accident. See Bodden v. Mayfair Supermarkets, Inc., 773
N.Y.S.2d 905, 906 (App. Div. 2004)(plaintiff injured while

exiting supermarket through automatic opening entrance
door); Bennett v. Town of Brookhaven, 650 N.Y.S.2d 752
(App. Div. 1996)(plaintiff fell while standing in a boat
that was being pulled out of the water). See also Smith v.
E.I. DuPont de Nemours & Co., No. 01-CV-453, 2004 WL
941495, at *1 (W.D.N.Y. Mar. 30, 2004)("Mistakenly
believing that he was still on the first or second step,
Plaintiff attempted to step directly off of the ladder onto
the ground."); Lombas v. Moran Towing & Transp. Co., Inc.,
899 F. Supp. 1089, 1096 (S.D.N.Y. 1995)("The unjustifiable
failure to use one's senses constitutes negligence.")

Gray has contended that a defendant can be found
negligent for signaling a motorist or pedestrian to move
from a position of safety into a position of danger. Courts
have held that under certain circumstances, a driver of a
motor vehicle may be liable to a pedestrian where that
driver undertakes to direct a pedestrian safely across the
road in front of his vehicle, and negligently carries out
that duty. Yau v. New York City Transit Auth., 781 N.Y.S.2d
778, 779 (App. Div. 2004); Valdez by Valdez v. Bernard, 506
N.Y.S.2d 363 (2d Dept. 1986). See also Thrane v. Haney,
695 N.Y.S.2d 628, 628-29 (App Div. 1999. Unlike a
pedestrian, a motorist such as the plaintiff in this case

22

has a statutory duty not to move her car until she knows it
can be moved safely. See N.Y. Veh. & Traf. Law § 1162.

Gray cannot show that Alutiiq assumed a duty as a
result of Maldonado's words to her, because in order to
hold Alutiiq liable for Mr. Maldonado's words, plaintiff
must show that Alutiiq was under a duty to exercise
reasonable care in giving plaintiff the information in the
first place. In Heard v. City of New York, 82 N.Y.2d 66,
603 N.Y.S.2d 414 (1993), the New York Court of Appeals
explained what a plaintiff must show to make out a cause of
action based on the words of the defendant:

> Not every misstatement, however, gives rise to a
> valid cause of action. For there to be an
> actionable claim, the defendant must be under a
> duty to the plaintiff to exercise reasonable care
> in giving the information, and plaintiff's
> reliance upon the information must be foreseeable
> (Prosser and Keeton, Torts § 33, at 207 [5th
> ed]). In elaborating on this test, we stated:
> "There must be knowledge or its equivalent that
> the information is desired for a serious purpose;
> that he to whom it is given intends to rely and
> act upon it; that if false or erroneous he will
> because of it be injured in person or property.
> Finally the relationship of the parties, arising
> out of contract or otherwise, must be such that
> in morals and good conscience the one has the
> right to rely upon the other for information, and
> the other giving the information owes a duty to
> give it with care."

23

Id. at 74.

Plaintiff is essentially attempting to assert a
cause of action for negligent misrepresentation outside of
the commercial context in which it arose. See id. at 73.
New York courts have dismissed causes of action for
negligent misrepresentation when a special relationship
could not be shown. See, e.g., Mandarin Trading Ltd. v.
Wildenstein, 884 N.Y.S.2d 47 (App. Div. 2009) (complaint
against art appraiser failed to state a cause of action for
negligent misrepresentation); Hayes v. Baker, 648 N.Y.S.2d
158, 159 (App. Div. 1996) (no special relationship between
the Village of Rockville Center and parents who hired a
babysitter from a list maintained as part of a community
service referral program); Pappas v. Harrow Stores, Inc.,
528 N.Y.S.2d 404, 407 (App. Div. 1988) (retailer of swimming
pools not liable for the negligence of an installer named
in a flyer picked up in its store by a person who did not
buy a pool); Ravenna v. Christie's Inc., 734 N.Y.S.2d 21,
22 (App. Div. 2001) (defendant not liable for giving
gratuitous information, based on a walk-in inquiry,
regarding the origin of a work of art that proved to be
erroneous). As the court noted in Ravenna, an awareness
that the plaintiff would rely on the advice given is

24

insufficient to state a claim for negligent

misrepresentation. "Reliance and the existence of a special

relationship are two distinct elements of a negligent

misrepresentation claim." Id. See also Kinsey v. Cendant

Corp., 576 F.Supp.2d 553, 558 (S.D.N.Y. 2008)(questions of

fact concerning the creation of a special relationship

precluded granting summary judgment).

Finally, Gray cannot be said to have justifiably

and reasonably relied on the information given her by

Maldonado, at a barrier she passed through regularly,

because it was her decision to step on the gas and move her

car forward through the barricade.

The law has long required plaintiffs to make full

use of the facts known to them, and their ordinary

intelligence, before asserting a cause of action for

misrepresentation. As the Court of Appeals has long held:

> if the facts represented are not matters
> peculiarly within the party's knowledge, and the
> other party has the means available to him of
> knowing, by the exercise of ordinary
> intelligence, the truth, or the real quality of
> the subject of the representation, he must make
> use of those means, or he will not be heard to
> complain that he was induced to enter into the
> transaction by misrepresentations.

Schumaker v. Mather, 133 N.Y. 590, 596 (1892).

**Conclusion**

Based on the facts and conclusions set forth

above, the motion of the Defendants for summary judgment is

granted and the complaint is dismissed with costs.

Submit judgment on notice.

So ordered.

**New York, NY**
**June _23_ , 2010**

ROBERT W. SWEET
U.S.D.J.

26